[No. B157086. Second Dist., Div. Eight. Feb. 21, 2003.]

PETER REED et al., Plaintiffs and Appellants, v.
MUTUAL SERVICE CORPORATION et al., Defendants and
Respondents.

**COUNSEL**

Timothy A. Canning for Plaintiffs and Appellants.

Jones, Bell, Abbott, Fleming & Fitzgerald, G. Thomas Fleming III and Catherine L. Dellecker for Defendants and Respondents.

OPINION

**BOLAND, J.**—Private investors petitioned the trial court to vacate an arbitration award after a panel of arbitrators concluded the investors' claims against their securities brokers were not eligible for arbitration. The trial court denied that petition and granted the brokers' counterpetition to confirm the award. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This is an appeal from a judgment granting a motion to confirm an arbitration award. The essential facts are undisputed. Beginning in 1990, appellants Peter and Lonnie Reed made several investments through securities accounts they maintained with respondent Mutual Service Corporation (MSC, formerly known as Titan/Value Equities Group).[1] The Reeds' final investment was made in January 1991. At the time they opened their accounts, the Reeds each signed standard preprinted agreements stating he "agree[d] that any controversy between [him] and [MSC] arising out of or relating to [his] account, transactions with or for [him] or the agreement or the breach thereof shall be settled by arbitration in accordance with the rules, then obtaining, of the National Association of Securities Dealers, Inc."

The Reeds initiated the underlying contractual arbitration proceeding with the National Association of Securities Dealers, Inc. (NASD). They claimed MSC lured them into investing in high-risk, high-commission securities by misrepresenting the nature and safety of those investments, both before and after they were made. At the time they submitted their claims, the Reeds signed uniform submission agreements stating they had read "the procedures and rules of the [NASD] relating to arbitration," and acknowledging that the proceeding would be governed by the "Constitution, By-Laws, Rules, regulations and/or Code of Arbitration Procedure of the [NASD]."

In May 2001, MSC filed a motion in the NASD arbitration proceeding to dismiss the Reeds' case arguing that, among other things, the claim was barred by the six-year rule of the NASD Code of Arbitration Procedure, which bars the arbitration of any matter in which more than six years have

---

[1]Respondent Glen Biener was a securities broker employed by MSC. Hereafter, we shall refer to Biener and MSC, collectively, as MSC.

elapsed since the event that gave rise to the dispute.[2] The Reeds filed a written opposition to that motion.[3]

On June 4, 2001, a panel of three arbitrators conducted a telephonic "pre-hearing" conference in which the parties' attorneys, but not the parties themselves, participated. In late June 2001, "after considering the pleadings, testimony, and evidence presented at the pre-hearing conference," the arbitrators issued an award in which they granted MSC's motion to dismiss the claim with prejudice.

The Reeds filed a petition to vacate the arbitration award arguing: (1) the arbitrators exceeded their powers by dismissing their claim with prejudice and without a hearing; (2) two of the arbitrators, Charles Graham and Robert Sether, created a "reasonable impression of bias" by failing to disclose information regarding their participation in other arbitrations; and (3) the contractual six-year time bar provision on which the award was based was void and contrary to public policy. MSC filed a counterpetition to confirm the award. The trial court denied the Reed's petition, and granted MSC's counterpetition. This appeal followed.

## DISCUSSION

The Reeds contend the court erred when it granted MSC's counterpetition to confirm the arbitration award because: (1) the arbitrators exceeded their powers by dismissing their claim without a hearing; (2) two arbitrators failed to disclose potentially material information; and (3) the award was based on an unconscionable arbitration provision which is contrary to public policy.

1. *The standard of review.*

▪ As a preliminary matter, the parties dispute the appropriate standard of review for this case. According to the Reeds, because the issues on appeal involve undisputed facts and/or questions of law, our review is de novo as to each. (See *Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1214 [96 Cal.Rptr.2d 168] [review of arbitration clause is de novo if no extrinsic evidence is presented]; *Flores v. Transamerica*

---

[2]MSC asserts—and the Reeds do not dispute—that the six-year rule began to run either at the time the investments were made, or no later than July 1992 when a bankruptcy filing by the issuer of the Reeds' investments put them on notice of the risks and losses associated with their investments. In either case, more than six years passed before the Reeds initiated the arbitration proceedings.

[3]The petitions submitted by the parties to the trial court did not include the papers filed in the NASD proceeding in connection with MSC's motion to dismiss. As a result, we cannot ascertain the precise content of either party's arguments there.

*Homefirst, Inc.* (2001) 93 Cal.App.4th 846, 851 [113 Cal.Rptr.2d 376] [as to the question of unconscionability, de novo standard applies if extrinsic evidence is undisputed].)

Relying primarily on *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362 [36 Cal.Rptr.2d 581, 885 P.2d 994], and *Pierotti v. Torian* (2000) 81 Cal.App.4th 17 [96 Cal.Rptr.2d 553], MSC insists our review is much more limited, and we must accept the trial court's findings of fact if they are supported by substantial evidence, and are bound to draw every reasonable inference to support the arbitration award. (*Advanced Micro Devices, Inc., supra,* 9 Cal.4th at pp. 376-380; *Pierotti, supra,* 81 Cal.App.4th at p. 24.)

In large measure, the Reeds are correct. The primary questions in this case—whether the award was made in excess of the arbitrators' contractual powers, and whether the six-year time bar provision is unconscionable—are questions of law. (See *Maggio v. Windward Capital Management Co., supra,* 80 Cal.App.4th at p. 1214; *Flores v. Transamerica Homefirst, Inc., supra,* 93 Cal.App.4th at p. 851 [if the extrinsic evidence is undisputed, the question of unconscionability is one of law].) However, the issue whether the arbitrators had a duty to disclose information about decisions made by other arbitration panels on which they served which might indicate bias, is a question of fact. Our review as to that issue is deferential. (*Betz v. Pankow* (1993) 16 Cal.App.4th 919 [20 Cal.Rptr.2d 834].)

2. *The arbitrators did not exceed their powers.*

In *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899], the California Supreme Court made it clear that the grounds for judicial review of a contractual arbitration award are extremely limited. Under *Moncharsh*, we are not free to review the merits of the controversy, the arbitrators' reasoning, or the sufficiency of the evidence on which the award is based. (*Id.* at p. 11.) Indeed, even "an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Id.* at p. 33.) The exclusive grounds on which an award may be challenged are contained in Code of Civil Procedure sections 1286.2 and 1286.6.

Of those grounds, the one pertaining here requires the court to vacate an arbitration award if "[t]he arbitrators exceeded their powers." (Code Civ.

Proc., § 1286.2, subd.' (a)(4).)[4] The Reeds contend the arbitrators exceeded their powers by dismissing their case based solely on the parties' pleadings and documentary evidence, and without a formal arbitration hearing. In dismissing the Reeds' claim, the arbitrators relied on rule 10304 of the NASD's Code of Arbitration Procedure (Rule 10304). That rule provides: "No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This Rule shall not extend applicable statutes of limitation, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction."[5]

Preliminarily, we note the Reeds have not raised the oft-presented issues regarding who decides the question of arbitrability—the court or arbitrators themselves—or whether the dispute at issue is arbitrable. Rather, the parties agree that their dispute, if viable, must be arbitrated. Accordingly, as we understand it, the question we must address is not *whether* the arbitrators had the power to decide the issue of the timeliness of the presentation of the Reeds' claims, but only whether they were empowered to decide that issue *in the manner* in which they did. The answer is yes.

Rule 10321 of the NASD Code of Arbitration Procedure, which governs NASD arbitrations, specifically provides that, upon the request of a party or an arbitrator, a telephonic prehearing conference, such as the one at issue, must be convened. Such conferences give the parties an opportunity to exchange documents, information, witness lists, etc., and to address "any other matters which will expedite the arbitration proceedings." (*Id.*, rule 10321, subds. (a), (d)(1).) Rulings on issues raised in the course of the prehearing conference may be issued by one or more members of the arbitration panel, and "shall be made upon the papers submitted by the

---

[4]The Federal Arbitration Act (9 U.S.C. § 1 et seq., FAA) preempts state laws which interfere with the enforcement of arbitration agreements that involve interstate commerce, such as the one involved here. (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 13-16 [104 S.Ct. 852, 859-861, 79 L.Ed.2d 1]; *Lewis v. Prudential-Bache Securities, Inc.* (1986) 179 Cal.App.3d 935, 940 [225 Cal.Rptr. 69] [holding arbitration clause in securities investor's agreement is part of a contract evidencing commerce and thus, within the ambit of the FAA].) The FAA is similar, however, to Code of Civil Procedure section 1286.2, subdivision (a)(4), in providing for vacation of an arbitration award if "the arbitrators exceeded their powers." (9 U.S.C. § 10(a)(4).) Accordingly, for the purposes of our analysis we see no conflict and will cite persuasive federal or state authorities.

[5]MSC asserts the arbitrators also dismissed the Reeds' claims on the grounds they were barred by applicable state and federal statutes of limitation. The Reeds do not dispute this assertion, but the absence of the relevant documents from the record prevents our independent verification of that fact.

parties, unless the arbitrator calls a hearing."[6] (*Id.*, rule 10321, subd. (e).) The NASD's arbitration process clearly anticipates that dispositive issues may arise in advance of the arbitration hearing itself which will require the arbitrators' attention. To that end, NASD training materials specifically address the presumably common circumstance that occurred here—the panel's need to address a dispositive prehearing motion arguing that the claims presented are stale and therefore ineligible for submission to arbitration under Rule 10304. In response to the Reeds' petition to vacate the award, MSC presented the trial court with an excerpt from the NASD's Arbitrator Training Manual.[7] The manual provides that "[a]lthough arbitration is an informal process, any party may file a dispositive motion—that is, a motion to dismiss all or part of a claim—prior to hearing." (NASD Rule on Dispositive Motions (1996), italics omitted.) The manual also notes that "eligibility" (viz., the contention that a claim is no longer arbitrable under Rule 10304 because at least six years have elapsed since the occurrence of the event which gave rise to the dispute), is one of the three "most common arguments for dismissing a claim."

When presented with a Rule 10304 motion, the arbitrator is urged to ensure each party is given a chance to respond and the arbitrator is urged to discuss the matter with his or her copanelists. If the panel concludes a genuine question of the eligibility of a claim has been raised, it is instructed to "ask the parties to brief the issue," because it may conclude there is a factual question as to whether there is a continuing occurrence or event that gave rise to the dispute, which would remove what would otherwise be a stale claim from the six-year time bar. If, after reviewing the facts, the panel concludes "a claim was filed after the six-year eligibility window," it is instructed to "dismiss the claim without prejudice," but only after "review-[ing] Rule 10304, the pleadings, motions, and responses," and "carefully consider[ing] each party's arguments."

This procedure is consistent with the NASD's arbitration procedures, which vest arbitrators with the power "to interpret and determine the applicability of all provisions under this Code," including, of course, the final determination regarding eligibility issues raised pursuant to Rule 10304. (*Ibid.*, see *Howsam v. Dean Witter Reynolds* (2002) 537 U.S. 79, 86 [123 S.Ct. 588, 593, 154 L.Ed.2d 491] [rejecting the argument that the court, not the arbitrator, must decide the "procedural gateway" question of the applicability of the NASD's six-year rule, in part, because Rule 10324

---

[6] The record contains materials submitted by the Reeds which indicate their awareness that the arbitrators could conduct a prehearing conference, which might be held telephonically, on the parties' written submissions, or in person.

[7] The Reeds did not deny their awareness, nor object to the submission, of these materials, and do not take issue with any statement therein.

specifically empowers arbitrators to interpret and determine applicability of all provisions of the NASD code.].)

The prehearing procedure at issue here is also consistent with case law interpreting Rule 10304 and its identical predecessor "Section 15" of the NASD Code of Arbitration Procedure. Those cases have uniformly concluded the NASD's six-year rule is a rule of eligibility which determines whether an arbitration panel has subject matter jurisdiction to consider a claim in the first instance. Rule 10304 erects a barrier through which every potentially arbitrable claim must pass to be deemed eligible for an arbitration hearing. (See, e.g., *Edward D. Jones & Co. v. Sorrells* (7th Cir. 1992) 957 F.2d 509, 512 ["'Section 15 . . . serves as an absolute bar to claims submitted for arbitration more than six years after the event which gave rise to the dispute'"]; *Prudential Securities, Inc. v. LaPlant* (D.Kan. 1993) 829 F.Supp. 1239, 1243 [same]; *Dean Witter Reynolds, Inc. v. McCoy* (D.Tenn. 1994) 853 F.Supp. 1023, 1030 [six-year time limit of Section 15 is a substantive eligibility requirement and NASD arbitration panel has no subject matter jurisdiction over any claim submitted for arbitration more than six years after the event in dispute occurred].) In other words, "Section 15 goes to the 'very power' . . . of NASD to arbitrate a claim. . . . Under that Section, NASD may not process, i.e., has no jurisdiction over, any claim submitted for arbitration more than six years after the 'event in dispute.' [Citations.]" (*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Jana* (N.D.Ill. 1993) 835 F.Supp 406, 410.) In sum, if a question is raised at the outset as to whether the claims presented are too stale to proceed to arbitration, that question *must* be resolved by the arbitrators before the panel or parties may move forward with the hearing itself.

We are not swayed by the failure of the NASD code to make explicit provision for the prehearing motion at issue here. The lack of explicit authorization does not mean dispositive motions are precluded. Implicit in the arbitrators' express power to deem a claim ineligible for arbitration is the corresponding authority to make that determination in advance of and without the necessity for a full hearing on the merits. (See *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1104 [47 Cal.Rptr.2d 650] [even in the absence of express authorization for summary judgment motions in the applicable arbitration rules or the parties' agreement, the arbitrator has implicit authority to rule on such motions].) Logic and necessity dictate this result. Once a question about a claim's eligibility to proceed to arbitration has been raised, a determination that the claim is indeed eligible is a condition precedent which must be satisfied before a full-blown arbitration hearing may be held.

In both their initial agreement to arbitrate and in the uniform submission agreements they signed at the time they instituted the arbitration proceedings, the Reeds declared their familiarity with and their agreement to be

bound by these and other rules which govern the NASD's arbitration procedures. Those rules, expressly incorporated into the Reeds' agreements, make explicit provision for the arbitrators to make the gateway determination of ineligibility of any claim over six years old. (See NASD, Code Arbitration Proc., rules 10304, 10324, 10331.) State and federal courts and legislatures have embraced a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 9.) Consistency with those principles dictates that, in a case such as this, in which the age of the claims at issue is not disputed, the issue of eligibility should and must be made at the outset by those charged with the power to make that determination. (NASD, Code Arbitration Proc., rules 10304, 10324; see also *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Jana, supra,* 835 F.Supp. 406, 409 ["Having chosen to arbitrate this case with NASD, the [investors] have chosen that the case be governed by the DASD Code as well."].)[8]

In sum, we conclude there is no merit to the Reeds' contention that, by disposing of their case at the prehearing stage, the arbitrators exceeded their authority and "employed a decision-making procedure to which [they] never agreed, and which is expressly prohibited by the arbitration agreement."

Further, we are not troubled by the fact that the dismissal was "with prejudice." The Reeds insist the arbitrators also exceeded their authority, and violated rule 10305 of the Code of Arbitration Procedure, when they prematurely dismissed their claim with prejudice and without informing the Reeds of their available remedies. Rule 10305 provides: "At any time during the course of an arbitration, the arbitrators may either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to their judicial remedies, or to any dispute resolution forum agreed to by the parties, without prejudice to any claims or defenses available to any party." (*Id.,* rule 10305, subd. (a).)

We reiterate, Rule 10304 expressly contemplates any dispute older than six years is not eligible for arbitration. If, as the Reeds suggest, rule 10305 of the Code of Arbitration Procedure means the arbitrators lacked the authority to determine at the prehearing stage—and without the need to convene a full-blown arbitration—that undisputed evidence showed the claims were not viable, Rule 10304 would be rendered meaningless.

---

[8]Again, we note that, at least until the filing of their reply brief herein, the Reeds have not argued the arbitrators lacked the power to decide issue of arbitrability. Instead, they argue only that the arbitrators exceeded their powers by deciding that issue without convening a formal arbitration hearing on the merits. To state this contention is to reveal its flaw: Rule 10304 would be meaningless if it did not require an arbitration panel to first conclude the claim with which it was presented was "live" (i.e., that the panel had subject matter jurisdiction), before proceeding to address its merits.

Moreover, the Reeds suffered no harm because of the "with prejudice" dismissal. If their NASD action was stale, the Reeds had no further "claims or defenses available to [them]" in that forum. In that case, the arbitrators' "with prejudice" dismissal simply stated the obvious—i.e., that the arbitration panel could not proceed to decide the Reeds' claims because it lacked jurisdiction. Recognizing that fact, the Reeds immediately sought judicial review of the arbitrators' decision by filing a petition to vacate. The record reflects the trial court fully considered the merits of their arguments and came to a reasoned conclusion. Technically, the arbitrators were required to specify their award was "without prejudice," and to notify the Reeds' of their judicial remedies. (NASD, Code Arbitration Proc., rule 10305, subd. (a).) They failed to do so. Nevertheless, it is clear the Reeds were aware of the import of the arbitrators' ruling and the judicial remedies available to them, and took full advantage of those remedies. They suffered no harm due to the arbitrators' mistake, and the trial court was correct to confirm the award.[9]

3. *There is no basis to vacate the award on the ground of arbitrator bias.*

An arbitrator's failure to disclose information indicative of bias may constitute grounds to vacate the award either under Code of Civil Procedure section 1286.2, subdivision (a)(1) ("award was procured by corruption, fraud or other undue means"), or Code of Civil Procedure section 1286.2, subdivision (a)(2) ("corruption in any of the arbitrators"). A neutral arbitrator must disclose "dealings that might create an impression of possible bias." Failure to do so constitutes misconduct and creates a ground to set aside the award. (*Commonwealth Corp. v. Casualty Co.* (1968) 393 U.S. 145, 149 [89 S.Ct. 337, 339, 21 L.Ed.2d 301]; *Ray Wilson Co. v. Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1087 [213 Cal.Rptr. 62]; see also Code Civ. Proc., § 1281.9, subd. (a) [an individual selected as a neutral arbitrator must disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial"].)

Whether an award is tainted by bias because an arbitrator failed to disclose a particular relationship is a factual determination made by the court reviewing the award. (*Figi v. New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 776 [166 Cal.Rptr. 774].) The party claiming bias bears the burden of establishing facts supporting its position. (See *Betz v. Pankow*

---

[9]We do not decide whether, in light of the fact that the dispute is not "eligible" for arbitration under Rule 10304, the Reeds would be entitled to pursue their claims in superior court, subject to the applicable statute of limitations. The provision that dismissals under the six year rule are to be "without prejudice" lends some credence to the argument, but the parties did not brief the issue, nor is it necessary to the disposition of this appeal.

(1993) 16 Cal.App.4th 919, 926 [20 Cal.Rptr.2d 834].) The test is objective, i.e., whether the relationship would create an impression of bias in the mind of a reasonable person. (*Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925, 936-937 [106 Cal.Rptr.2d 240].)

█ Referring to these standards, the Reeds insist the court should have vacated the award because two members of the arbitration panel failed to disclose they "had previously granted prehearing motions in at least two other arbitrations." They argue this nondisclosure represents a kind of "corruption" because "[a] person aware of those facts might reasonably entertain a doubt that such an arbitrator would be able to be impartial in deciding whether such motions were permitted under the NASD Code." We disagree.

The evidence of potential bias the Reeds presented to the court showed only that, in two completely unrelated matters decided in 1998, two separate panels of three arbitrators agreed cases presented to them should be terminated, in whole or in part. In the first, in which arbitrator Graham participated, the panel granted a motion to enforce the parties' settlement agreement as to some issues involved in their employment dispute. In the other, arbitrator Sether was a member of a panel that granted a motion to dismiss an arbitration without prejudice, after the claimant failed to prosecute the matter for over three years.[10]

Nothing in any of this "evidence" is remotely indicative of bias or potential bias on the part of either arbitrator about which the Reeds complain. (See *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1345 [19 Cal.Rptr.2d 215] ["To support a claim of bias, a party must demonstrate the arbitrator had an interest in the subject matter of the arbitration or a preexisting business or social relationship with one of the parties which would color the arbitrator's judgment"]; cf. *Pacific etc. Conference of United Methodist Church v. Superior Court* (1978) 82 Cal.App.3d 72, 86 [147 Cal.Rptr. 44] ["bias" exists where the judge evidences a " 'predisposition to decide . . . an issue in a certain way, which does not leave the mind perfectly open to conviction' "].) Moreover, this information does not indicate either panelist "has a firm opinion or belief as to the subject of an action for which she/he is an arbitrator," such that he would be vulnerable to a challenge for cause under the NASD's procedures on the ground he might be precluded "from rendering an objective or impartial determination." (See

[10]The Reeds also allege Graham failed to disclose his participation in a third arbitration, *Wong v. Charles Schwab.* However, the record contains no information which would enable the court to assess the merits of their contention that Graham's participation therein evidences his potential bias.

NASD, Code Arbitration Proc., rule 10312; NASD Arbitration Procedures (Jan. 2001) p. 15.)

### 4. *The public policy argument has been waived.*

 ██ ██ In their final contention of error, the Reeds assert the award should have been vacated because any rule which prohibits the arbitration of any claim over six years old is an unconscionable contractual provision and void as against public policy.[11] The "public policy" on which the Reeds rely is embodied in Civil Code section 1668, which states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." ██ The Reeds contend the NASD's six-year rule is unconscionable because it provides immunity from liability to brokers who are successful in concealing their malfeasance, or in otherwise discouraging investors from bringing an arbitration claim for six years.

We decline to address the Reeds' contention of unconscionability. Normally, the question of the enforceability of an arbitration clause must be raised before the parties proceed to arbitration. The parties cannot, as the Reeds did here, willingly accede to and participate in the arbitration process without even raising the public policy issue, only to raise the question before the trial court later. "[A] party who questions the validity of the arbitration agreement may not proceed with arbitration and preserve the issue for later consideration by the court after being unsuccessful in the arbitration." (*Bayscene Resident Negotiators v. Bayscene Mobilehome Park* (1993) 15 Cal.App.4th 119, 129 [18 Cal.Rptr.2d 626].)[12]

Any claim of illegality must be raised before the arbitrator or it is deemed waived. A contrary rule might tempt a party to "play games" with the

[11]In their reply brief, for the first time, the Reeds raise the issue of whether the arbitrators had the authority to decide the eligibility issue. Fairness militates against our consideration of any arguments an appellant has chosen not to raise until its reply brief, and the authorities holding to that effect are numerous. (See, e.g., *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 595 [101 Cal.Rptr.2d 86] [contentions raised for the first time in a reply brief are deemed waived]; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 763-765 [60 Cal.Rptr.2d 770] [an issue that has not been discussed in an opening brief cannot be raised for the first time in a reply brief]; *Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335, 351 [100 Cal.Rptr.2d 854].)

In any event, the issue of who has the authority to decide the question of eligibility was recently put to rest in *Howsam v. Dean Witter Reynolds, supra,* 537 U.S. at page 84 [123 S.Ct. at page 592], in which the Supreme Court resolved a conflict among the circuits and held that the question of eligibility under Rule 10304 is for the arbitrator, not the court, to decide.

[12]This rule applies even if the party does not discover the basis for opposing arbitration until after arbitration proceedings have begun. In such a case, the objecting party must withdraw from the arbitration process, and commence litigation on the issue of enforceability. At that point, the adverse party could petition to compel arbitration, thereby freeing the court to consider at the outset the issue of the enforceability of the allegedly offending clause. (See

arbitration and not raise the issue of illegality until and unless it lost. (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 32.) The record contains no indication the Reeds attempted to address the question of the unconscionability of Rule 10304 either when they initiated the arbitration, or in response to MSC's motion to dismiss. ■ ■ Accordingly, that issued is deemed waived.[13] (*Ibid.*)

DISPOSITION

The judgment is affirmed.

Cooper, P. J., and Rubin, J., concurred.

---

*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 982 [64 Cal.Rptr.2d 843, 938 P.2d 903].)

[13]MSC's motion for sanctions is denied. Although we disagree with the Reeds' contentions, their arguments are not so wholly lacking in merit as to justify the imposition of sanctions. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179] [holding that sanctions are justified only if an appeal is prosecuted for an improper motive, such as to harass the respondent or delay an adverse judgment, or indisputably lacks merit].)