[No. G034551. Fourth Dist., Div. Three. Nov. 21, 2005.]

KIRK S. EVANS et al., Plaintiffs and Appellants, v.
CENTERSTONE DEVELOPMENT CO. et al., Defendants and
Respondents.

## COUNSEL

Law Offices of Randall S. Waier and Randall S. Waier for Plaintiffs and Appellants.

Wendell, Rosen, Black & Dean, Charles A. Hansen and Amanda M. Steiner for Defendants and Respondents.

## OPINION

**RYLAARSDAM, Acting P. J.**—After we decided two earlier appeals related to the disputes noted here, plaintiffs Kirk S. Evans (Evans), Kirk S. Evans, Inc., KSE Development, Inc., and the Kirk and Laurie Evans Trust now appeal from a judgment entered after confirmation of an arbitrator's award. They also appeal from orders compelling arbitration, denying a petition to vacate or modify an arbitration award (this is not appealable but can be reviewed on appeal from the judgment (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1453–1454 [9 Cal.Rptr.2d 862]), and denying and striking requests for trial de novo. They contend the arbitrator acted in excess of his powers and committed misconduct and that the order compelling arbitration was improper. We disagree with all of these assertions and affirm the judgment.

Defendants CenterStone Development Company, a California corporation (CenterStone), Ernest V. Castro, Sr., Harold G. Woods, Jr., Harri Keto, CenterStone Carlsbad, LLC, A California Limited Liability Company, CenterStone Cerritos, LLC, and Beaumont Holdings filed a motion for sanctions, arguing that plaintiffs' briefs violated the Rules of Court and their appeal was frivolous. We agree with both contentions and grant the motion. We publish this opinion because this case presents a prime example of a frivolous appeal and of flagrant violations of the rules pertaining to appeals. We also publish this opinion to discourage parties to arbitration agreements from frivolously seeking judicial review of matters not cognizable in our courts.

## FACTS

CenterStone, a real estate development company, was owned by Evans, Castro, and Woods, with Evans acting as president. After disputes arose among the principals, Evans was ousted. In August 2000, the parties entered into a written settlement agreement resolving litigation among them.

The agreement contained an arbitration provision that stated disputes would be decided by arbitration conducted by the Judicial Arbitration and Mediation Services (JAMS) using its Streamlined Rules; discovery was to be governed by Code of Civil Procedure section 1283.05 "as determined by the retired Judge hearing the matter." The settlement agreement also contained a confidentiality provision, which stated that the "parties . . . shall not discuss, reveal, or disclose to any third party, other than their lawyers or accountants . . . on a need to know basis, any of the facts, circumstances, [or] disputes leading up to the Litigation and shall keep the terms and conditions of this Agreement strictly confidential, unless otherwise compelled under law, or as may be needed to defend against or prosecute any litigation."

At the time CenterStone terminated Evans, it also discontinued using the services of two brokers, JoAnn Ulvan and William Geller (brokers), who subsequently sued defendants. Defendants contended plaintiffs provided information to the brokers, in violation of the confidentiality provision in the settlement agreement, to support the brokers' lawsuit against defendants. Defendants initiated arbitration proceedings against plaintiffs for breach of the agreement and sought damages that "could exceed $2,000,000."

Thereafter, JAMS sent the lawyers for the parties a letter confirming the commencement of arbitration. It included a copy of its Streamlined Rules and a list of three proposed arbitrators. The parties were advised that if they could not agree on an arbitrator, they should each strike a name from the list and rank the other two in order of preference. Defendants selected Judge Smith as their first preference. Evans himself called, e-mailed, and faxed JAMS advising he wanted Judge Ryan to act as arbitrator. JAMS telephoned plaintiffs' attorney to explain that, since Judge Ryan was not one of the three arbitrators on the list, the parties had to agree to her or plaintiffs had to use the strike list. Plaintiffs' attorney never responded, and in May 2002 Judge Smith was assigned as the arbitrator.

When JAMS notified the parties of the selection, it also sent a disclosure statement, revealing it had found no matters where Judge Smith had acted as an arbitrator in any cases involving the parties or their counsel. The notice also gave the parties 15 days to disqualify Judge Smith; neither side did so.

Part of the settlement agreement required defendants to pay certain sums to plaintiffs. In December 2002, alleging defendants had breached the agreement, plaintiffs filed an action in the superior court to compel payment or rescind the agreement. Defendants then filed a motion to compel arbitration pursuant to the terms of the settlement agreement, which the court granted. Although defendant Keto was not a party to the settlement agreement, he agreed to have the claims against him also submitted to arbitration.

The arbitration of all the claims occurred during September 2003 and written closing briefs were all filed by October 9. The arbitrator issued his preliminary award on November 5, finding that plaintiffs had breached the confidentiality provision and the covenant of good faith and fair dealing in the settlement agreement by disclosing information to the brokers. He awarded defendants almost $1.1 million, which constituted the amount of attorney fees and costs they had spent defending the brokers' action.

The award also found plaintiffs were entitled to an offset of $900,000 for monies defendants had withheld once plaintiffs breached the settlement agreement. It reserved jurisdiction to determine accrued interest on the offset funds owed to plaintiffs, to determine the amount of attorney fees and costs to be awarded to defendants, including time for additional briefing, and to correct clerical errors and issue a final award.

On November 19, plaintiffs filed a motion to reopen or for reconsideration, which the arbitrator denied. In late November, defendants made a motion for attorney fees and costs. On December 17, the last documents regarding this motion were filed.

On February 13, 2004, the arbitrator issued his final award, which set out the amount of attorney fees awarded to defendants but otherwise was essentially identical to the preliminary award. It again reserved jurisdiction for 60 days to determine the amount of interest and to correct clerical errors.

On March 8, plaintiffs filed motions for a new trial in the Superior Court as to their action against defendants. While we found nothing in the record, we assume the motions were denied. A few days later, they applied to the arbitrator to modify the final arbitration award to insert the amount of interest on the accrued monies owed to them. Another few days thereafter, plaintiffs filed another motion before the arbitrator to reopen the arbitration, which was again denied. On March 23, they filed an opposition to defendants' application as to the amount of interest.

On March 24, plaintiffs sent a letter to the arbitrator objecting to the award on the grounds it was not "complete" because it still required a calculation

of interest owed to them, and therefore was not final. They argued the Streamlined Rules required the award be rendered 30 days after the hearing was completed.

On March 30, the arbitrator issued his corrected and supplemental final award, which included the specific sum of accrued interest. Defendants then filed a petition to confirm the award. Plaintiffs filed opposition to the petition, a petition to vacate the award, and requests for trial de novo. The court granted defendants' motion to strike the requests and confirmed the award; it denied the motion to vacate. Plaintiffs then made a motion for a new trial and to vacate or modify the judgment. The trial court denied this motion as well.

## DISCUSSION

### Introduction

■ Public policy supports minimal judicial participation in arbitration proceedings. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).) Courts do not review arbitration awards for factual or legal errors (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407 [29 Cal.Rptr.3d 881]), including sufficiency of the evidence or reasoning of the arbitrator (*Moncharsh, supra,* 3 Cal.4th at p. 11). When a court does review an award, it draws all reasonable inferences to support the decision and "displays substantial deference towards the arbitrator's determination of his or her contractual authority. [Citations.]" (*Jones v. Humanscale Corp., supra,* 130 Cal.App.4th at p. 408.)

### The Arbitrator Did Not Act in Excess of His Powers.

One of the limited bases on which an arbitration award may be vacated is when an "arbitrator[] exceeded [his] powers and the award cannot be corrected without affecting the merits of the decision . . . ." (Code Civ. Proc., § 1286.2, subd. (a)(4); all further statutory references are to this code unless otherwise stated.) Scattered throughout their briefs, plaintiffs make several claims, apparently, although not clearly, on grounds the arbitrator acted in excess of his powers. None of them have merit.

#### Streamlined Rules

A theme underlying several of plaintiffs' arguments is the applicability of the JAMS Streamlined Rules. Plaintiffs contend the 2000 version of the rules in effect at the time the settlement agreement was signed apply. We disagree.

Preliminarily we note that, despite their heavy reliance on the 2000 version of the rules, plaintiffs never clearly gave a record reference to enable us to

review them. All of their direct citations were to the 2002 version, even though they constantly argued those did not apply. The one reference to the 2000 rules they did give was buried in the brief and so oblique as to be meaningless. Although not required to conduct a search (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 [115 Cal.Rptr.2d 705]), we were faced with the challenge of sorting through over 6,600 pages of transcripts in 23 volumes to locate the 2000 version in order to be able to address plaintiffs' arguments.

Plaintiffs maintain that, at the time they entered into the settlement agreement, they specifically relied on the 2000 version of the Streamlined Rules because they limited damages to $250,000. There is no basis for this claim. Plaintiffs set out testimony from the arbitration purportedly in support of this contention but fail to provide any record references. We decline the implied invitation that we review the 1,839 pages of the arbitration transcript to find such testimony. In addition, statements in Evans' declaration in support of plaintiffs' motion to vacate (two pages out of the almost 150 cited) do not substantiate their claim because the trial court sustained defendants' objection to them.

The rules themselves demonstrate the frivolous nature of the plaintiffs' contention. Rule 3 of the 2000 rules states that "JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration . . . will apply . . . unless the Parties have specified that another version of the Rules will apply." Contrary to plaintiffs' argument, the settlement agreement does not refer to any version of the rules. Thus, even assuming plaintiffs were relying on the 2000 version, those rules themselves plainly advised them that different rules could be in effect when and if an arbitration took place. The arbitrator did not exceed his powers by using the later rules.

*The Award is Not in Excess of Jurisdiction.*

Plaintiffs contend the award to defendants was in excess of the purported $250,000 jurisdictional limit of the arbitrator. But this is based on their unfounded claim that the settlement agreement required use of the 2000 version of the JAMS Streamlined Rules. Rule 1 of the 2002 Streamlined Rules states that they apply to binding arbitrations where the parties have agreed to use them, "or, in the absence of such agreement, no disputed claim or counterclaim exceeds $250,000 . . . ." A plain reading of this language shows the amount of damages is not limited where, as here, the parties merely agreed to use the Streamlined Rules. Plaintiffs' assertion that, because the damages exceeded $250,000, neither their claims nor those of defendants were subject to arbitration under the settlement agreement is without merit.

### Binding Arbitration

■ Plaintiffs assert the arbitrator failed to make a necessary finding, i.e., that the arbitration was binding. Presumably, although not stated, plaintiffs refer to their complaint, which was ordered to arbitration under the settlement agreement. However, both the settlement agreement and rule 1 of the Streamlined Rules state the arbitration was to be binding. Thus this was not an issue before the arbitrator. Nevertheless, the award also states that the "matter was submitted to binding arbitration pursuant to the terms of the Settlement Agreement." And, in confirming the award, the trial court concurred. Moreover, the well-established general rule is "that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh, supra,* 3 Cal.4th at p. 9.) There is no error here.

### Timely Award

Nor are we persuaded by plaintiffs' argument the arbitrator's final award was not timely and he thus lost jurisdiction. Plaintiffs rely on the Streamlined Rules that state the final award should be served within 30 days after the hearing closes. The hearing closed on October 9 and the arbitrator rendered a preliminary award on November 5, 2003. In that award he reserved jurisdiction to determine interest and attorney fees and correct clerical errors.

The record reveals that even if the award was late, which we do not decide, plaintiffs waived any objection to the timing. JAMS rule 22(a) states that when a party believes the rules have been violated, he or she must "promptly . . . object in writing [or] the objection will be deemed waived." In addition, section 1283.8 provides that a party waives a timeliness objection "unless he gives the arbitrators written notice of his objection prior to the service of a signed copy of the award on him."

Plaintiffs' objection was made after service of the final award and only a few days before service of the corrected final award. Plaintiffs did not object within the 30-day period after the interim award or 30 days after the final award, both of which reserved jurisdiction to amend the award. In fact, plaintiffs impliedly, if not explicitly, accepted the award, treating it as timely, by filing motions to correct the award, an opposition to defendants' motion, a motion to reopen, and a motion for reconsideration.

Although rule 19(a) of the Streamlined Rules provides for an award to be issued within 30 days after the hearing closes, it also allows for a longer period for good cause. Plaintiffs' conduct and the issues requiring further decision support a finding there was good cause for delay. The arbitrator had the right to reserve jurisdiction to determine attorney fees and interest.

(*Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1433–1434 [104 Cal.Rptr.2d 209].) He also had the power to amend the award any time before it was confirmed so long as it was "consistent with other findings on the merits of the controversy" and did not prejudice a party. (*Delaney v. Dahl* (2002) 99 Cal.App.4th 647, 658–659 [121 Cal.Rptr.2d 663].) Here, inserting the amount of attorney fees and interest was appropriate.

In *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085 [40 Cal.Rptr.2d 700], after he had reserved jurisdiction to do so, the arbitrator amended a final award to insert the exact amount of attorney fees. On appeal, plaintiff contended the arbitrator had lost jurisdiction to correct the award since it was done more than 30 days after close of the hearing. The court disagreed, stating that the correction "was a timely modification of the final order, correcting the form of the attorney fees and costs award." (*Id.* at p. 1106.)

■ We also reject plaintiffs' complaint that the final award was improper because it was faxed and not served by mail. Section 1283.6 states that service may be personal, by mail, or as provided in the agreement. The 2002 Streamlined Rules provide service "*may* be made by U.S. mail" (italics added); they do not require it.

### Litigation Privilege

Plaintiffs contend the arbitrator did not rule on their defense that Evans's testimony in a deposition in the brokers' case against defendants was protected by the litigation privilege (Civil Code section 47, subdivision (b)) and thus could not be the basis for a finding that he breached the confidentiality provisions or the covenant of good faith and fair dealing in the settlement agreement. In the first place, even if the arbitrator did fail to address this issue, it is entirely within his powers under the arbitration agreement and not reviewable on appeal. (*Moncharsh, supra,* 3 Cal.4th at p. 28.)

■ Furthermore, plaintiffs raise this issue in a two-page footnote in the introduction to the opening brief. This is a violation of court rules that require arguments to be contained in discrete sections with headings summarizing the point. (Cal. Rules of Court, rule 14(a)(1)(B).) We do not have to consider issues discussed only in a footnote. (*Roberts v. Lomanto* (2003) 112 Cal.App.4th 1553, 1562 [5 Cal.Rptr.3d 866].)

Moreover, as defendants point out, plaintiffs waived this issue by failing to raise it in the trial court. Even after this specific warning about the deficiency of their argument contained in their brief, plaintiffs were unable to show they

had brought up the issue in the trial court. The best they could do was point to a single page in their petition to vacate the award, which they inaccurately characterize as "more precise[], among other places." They did not direct us to any other "place," if there was any, and we refuse to search through 170 pages of transcripts to determine whether we can improve on plaintiffs' argument. (*Del Real v. City of Riverside, supra,* 95 Cal.App.4th at p. 768.)

And the cited page is inadequate. Plaintiffs have not shown they made any argument in the petition to vacate or any other motion or petition filed in the trial court where they raised this issue for consideration. Their record reference is to an argument contained in a footnote in an arbitration brief attached as an exhibit to the petition to vacate. This was not sufficient to request a ruling from the trial court or to preserve the issue for appeal. (*Britz, Inc. v. Alfa-Laval Food & Dairy Co., supra,* 34 Cal.App.4th at p. 1102 [trial court must review de novo any claim of arbitrator misconduct if issue "properly raised"]; *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 648 [67 Cal.Rptr.2d 380] [issues not raised at trial not reviewable on appeal].)

### *Answer to Complaint*

Plaintiffs fault defendants' failure to file an answer to their complaint, in violation of the Streamlined Rules. They claim that since there was no written waiver of the rules, the arbitrator had no authority to consider defendants' defenses. Plaintiffs fail to point to anything in the record showing they objected to the lack of an answer (JAMS rules 22(a)) or that they were in any way surprised or prejudiced by defendants' evidence or legal theories offered in opposition to the complaint. They waived any claim on this ground.

### *The Arbitrator Was Not Biased and Did Not Commit Any Misconduct.*

Another ground for vacating an arbitration award is where a party's rights "were substantially prejudiced by misconduct of a neutral arbitrator." (§ 1286.2, subd. (a)(3).) None of the several claims plaintiffs make on this basis has merit.

### *Disclosure and Disqualification*

Plaintiffs maintain the arbitrator failed to make required disclosures under section 1281.9. Specifically, they complain that although he made initial disclosures that he had no relationships with parties to the arbitration and their attorneys, the disclosures were not complete. Plaintiffs fail to apprise us what conflict there was that required the arbitrator to make a disclosure, and therefore they have waived this claim. (*People v. Stanley* (1995) 10 Cal.4th

764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].) We again decline the opportunity to search the record to determine if they advised the trial court in this regard.

■ In addition, plaintiffs contend that once their complaint was ordered to arbitration, the arbitrator did not make disclosures as to defendant Keto and other additional parties named as defendants, and defendants' new lawyers. Section 1281.9, subdivision (a) requires an arbitrator to disclose anything that would cause a reasonable person with knowledge of those facts to believe the arbitrator would not be impartial. Contrary to plaintiffs' claim, there is no requirement in either the Code of Civil Procedure or the Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Cal. Rules of Court, appen., div. VI) to disclose the lack of any such information, what plaintiffs call "nondisclosures."

■ Under section 1281.91, subdivision (a), if an arbitrator fails to make required disclosures under section 1281.9, he must be disqualified if a party serves a notice of disqualification within 15 days after any disclosure was due. Here, plaintiffs did not serve a notice of disqualification. Pursuant to section 1281.91, subdivision (c), plaintiffs' failure to timely serve the notice waives disqualification unless the arbitrator makes a material omission or misrepresentation in his disclosure.

■ Plaintiffs complain that because the arbitrator did not disclose the lack of any conflicts, they had no way of knowing whether there were any. But "[w]hether an award is tainted by bias because an arbitrator failed to disclose a particular relationship is a factual determination made by the court reviewing the award. [Citation.] The party claiming bias bears the burden of establishing facts supporting its position. [Citation.] The test is objective, i.e., whether the relationship would create an impression of bias in the mind of a reasonable person. [Citation.]" (*Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1370–1371 [131 Cal.Rptr.2d 524].)

Plaintiffs fail to point to anything in the record to show any bias based on failure to disclose. They rely merely on lack of disclosure without telling us what the arbitrator should have disclosed other than a disclosure that there was nothing to disclose. *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156 [18 Cal.Rptr.3d 142], which plaintiffs cite, is inapt. There, the proposed arbitrator disclosed several relationships that potentially affected his neutrality. One of the parties timely filed a notice of disqualification on that basis. The arbitrator should have disqualified himself under section 1281.91, subdivision (b)(1), which provides for disqualification under those circumstances, but failed to do so. Such was not the case here.

The same is true for plaintiffs' related claim about Karla Adams, a JAMS employee. Adams was "temporarily assigned" to act as the arbitrator's case manager. When JAMS learned Adams's former husband had previously worked for "one of the parties," it assigned a different case manager and notified the parties. Based on the JAMS administrative notes for the arbitration, it appears Adams was assigned to the matter for less than one month and made only one entry during a nonactive period at the time the parties were waiting for the trial court's ruling on the motion to compel arbitration of plaintiffs' complaint.

Within a week after JAMS sent the notice, plaintiffs' lawyer sent a letter to JAMS containing a request to appoint another arbitrator. Less than one week later, JAMS reconfirmed that Judge Smith would act as the arbitrator.

Rule 12(j) of the JAMS Streamlined Rules provides that "[a]t any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause . . . based upon information that was not available to the Parties at the time the Arbitrator was selected. . . . JAMS shall make the final determination on such challenge, and that decision shall be final." Here, JAMS made its decision to keep Judge Smith as the arbitrator. The burden is on plaintiffs to show bias, and nothing in the record supports it. Adams was only briefly assigned to the matter, and there is not a shred of evidence she had any influence on the arbitration proceedings at all.

In connection with these arguments, plaintiffs also attack the initial selection of Judge Smith as the arbitrator. However, their unilateral request for Judge Ryan and their failure to strike a name from the three-name list of potential arbitrators were not in accordance with the procedure set out by the JAMS rules. And after JAMS notified plaintiffs' counsel of the deficiency, he did not respond.

Plaintiffs' claim, without benefit of record references, that they were not represented by counsel at the time they received the original strike list from JAMS is irrelevant and not borne out by the record. Moreover, although plaintiffs assert defendants agreed to Judge Ryan by failing to object to their request, nothing in the record shows a copy was sent to defendants. Finally, once Judge Smith was appointed, plaintiffs did not object. There is no basis for vacating the award based on the selection of the arbitrator or the disclosure and disqualification process.

*Rulings and Conduct of the Arbitration*

Plaintiffs challenge the arbitrator's rulings on discovery and admission of evidence during the proceedings. Although not clearly stated, we presume

plaintiffs contend this is some kind of misconduct on the part of the arbitrator. (§ 1286.2, subd. (a)(3), (4).) They complain, again without record references, that the arbitrator quashed subpoenas duces tecum whereby they were seeking financial records related to funds withheld by defendants and the accrued interest on those funds. In quashing the subpoenas, the arbitrator ruled the documents sought were not relevant because there was no issue as to the amount of funds.

█  Here, the settlement agreement provided for discovery pursuant to section 1283.05. Under that section, arbitrators have great latitude and discretion when ruling on discovery matters. (§ 1283.05, subd. (b); *Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1089 [106 Cal.Rptr.2d 431] [where discovery allowed by arbitration agreement, arbitrator does not exceed power even if discovery rulings incorrect].) Even had the arbitrator's ruling been incorrect, which we do not and cannot decide (*Moncharsh, supra,* 3 Cal.4th at p. 11), it certainly was not because he exceeded his power. Nor did he do so, as contended by plaintiffs, by admitting a declaration as to the amount of interest.

█  Likewise, the arbitrator's admission of documents that allegedly had not been produced by defendants in discovery was not misconduct. The arbitrator has broad discretion in conducting the hearing and ruling on admission of evidence. (§ 1282.2, subd. (c); see also § 1283.05, subd. (b).) And he is not required to follow the rules of evidence and procedure. (§ 1282.2, subd. (d).) The rulings about which plaintiffs complain do not constitute misconduct.

### Comprehensive Rules

Plaintiffs contend the arbitrator improperly rewrote the arbitration agreement by using the JAMS Comprehensive Rules instead of the Streamlined Rules. Plaintiffs do not direct us to a copy of the Comprehensive Rules, but claim they do not limit awards to $250,000. However, the Streamlined Rules in effect at the time of the arbitration did not have such a limit either.

Even if the arbitrator used the Comprehensive Rules, he did not rewrite the contract. Again without benefit of record references, plaintiffs purport to recite particulars of a telephone conference with the lawyers and the arbitrator wherein they discussed use of the Comprehensive Rules and the arbitrator's reference to a notation in his file showing the parties' agreement to use those rules. The arbitrator sent the parties a copy of his written memo to the case manager documenting that agreement. He provided this not just to defendants' attorney, as plaintiffs represent, but to both sides. The parties were free to orally agree to use the Comprehensive Rules, and plaintiffs have provided no authority to the contrary. There was no misconduct.

*Order Compelling Arbitration*

Plaintiffs challenge the order of the superior court sending their complaint against defendants to arbitration. The only reason they advance in support of their argument appears to be that defendant Keto, a lawyer who helped negotiate the settlement agreement, was not a party to that agreement. However, plaintiffs failed to mention that Keto agreed to submit to arbitration pursuant to the settlement agreement. (*Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1319 [231 Cal.Rptr. 315] ["Plaintiffs' attempt to avoid arbitration by arguing the arbitration clause cannot be applied to named defendants who were not signatory to the . . . agreement requires only cursory discussion"].) In addition, the claims against Keto arose out of the settlement agreement and were essentially the same as those against the other defendants. (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1717–1718 [1 Cal.Rptr.3d 328] [nonsigner may enforce arbitration provision where claims against him are " 'intimately founded in and intertwined with' " contract at issue].)

Plaintiffs rely on a statement in the arbitrator's opinion that, because Keto did not sign the settlement agreement, he was not a necessary party to the arbitration. This statement was made in an entirely different context, and, in any event, is irrelevant since Keto agreed to the arbitration. Because the contractual arbitration was binding, by consenting to arbitration Keto perforce was agreeing it would be binding. And he has not challenged the award.

### Miscellaneous

Because of the lack of organization and the improper format of plaintiffs' briefs, arguments in addition to those we have discussed may have been alluded to or raised in other than the discussion section. To that extent or to the extent plaintiffs mentioned other issues without fully or properly briefing them, they are waived. (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 59 [15 Cal.Rptr.3d 383]; *Roberts v. Lomanto, supra,* 112 Cal.App.4th at p. 1562.)

*Sanctions*

Defendants seek sanctions for plaintiffs' filing of a frivolous appeal and for violation of appellate rules. Although sanctions could be awarded on either ground, the record supports a granting of the motion on both bases.

### Rules Violations

Sanctions are warranted for a party's unreasonable violations of the rules of appellate procedure. (Cal. Rules of Court, rule 27(e)(1)(C); *Pierotti v.*

*Torian* (2000) 81 Cal.App.4th 17, 29 [96 Cal.Rptr.2d 553].) Plaintiffs' briefs are cornucopias of such violations, as detailed in defendants' motion and noted several times in this opinion.

California Rules of Court, rule 14(a)(1)(B) requires each argument raised to be in a separate section with a heading summarizing the point. Plaintiffs' issues are haphazardly splashed throughout the brief, beginning in a two and one-half page footnote in the introduction, continuing through the section purporting to be a statement of facts, and finally ending in the discussion section. As defendants noted, plaintiffs' opening brief is "repetitive, tangled and, at times, utterly incoherent . . . ." Defendants assert this required them to devote far too many hours to be able to craft a reply. We believe them; we were required to spend an inordinate amount of time deciphering the claims ourselves. "[A]n opening brief is not an appropriate vehicle for an attorney to 'vent his spleen' after losing at an arbitration hearing." (*Pierotti v. Torian, supra,* 81 Cal.App.4th at p. 32, fn. omitted.)

Similarly, plaintiffs failed to "provide a summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 14(a)(2)(C).) The recitation was not in summary style, was overly lengthy, and included irrelevant information and argument. Plaintiffs presented "facts" not supported by or contrary to the record and failed to include other relevant facts. For example, several times they emphasize their claim that the arbitrator was biased because he sent a copy of his internal memorandum to defendants only. But the record is quite clear that it was sent to both parties. Moreover, plaintiffs repeatedly cite to 170 pages of their motion to vacate without directing us to specific pages and fail to advise us that most of the statements in the declarations were stricken by the trial judge and cannot support their claims.

These violations continued in the reply brief even after defendants had highlighted them in the motion for sanctions. " 'We consider the failure to comply with these rules in [appellants'] opening brief to be compounded and unreasonable when, after the respondents pointed out these errors, counsel for [appellants] violated the same rules in the reply brief.' " (*Pierotti v. Torian, supra,* 81 Cal.App.4th at p. 31.)

Plaintiffs also egregiously violated the rule requiring specific page citations. (Cal. Rules of Court, rule 14(a)(1)(C); *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1140–1141 [135 Cal.Rptr.2d 796] [facts and arguments must be supported by required record references, including "providing exact page citation"].) Often they failed to make any reference to the record. To the extent they did provide citations, too many times it was to hundreds of pages in the transcript, referring to an entire

document rather than a specific page. It was not until their opposition to the motion for sanctions, where they argued they had provided page point references, that plaintiffs actually did so. And most of those references were to statements in declarations that had been stricken. Moreover, even had they been correct, citation at this point was too little, too late. Although we are not required to plow through mounds of appendices, at times we did, and we have no doubt defendants had to expend substantial additional and unnecessary time because of this violation.

Further, the appellants' appendix did not conform to the rules. California Rules of Court, rule 5.1(b)(2) provides the "appendix must not contain documents . . . that are unnecessary for proper consideration of the issues." Despite their claim to the contrary, many of the documents in the 23 volumes were never referenced by plaintiffs and were not necessary to our determination of the issues. Plaintiffs assert "[t]his is a complex appeal documented with volumes of paper" and that they "wanted to provide the Court with 'complete' documentation . . . ." However, the appeal was complex only because plaintiffs caused it to be so by raising issues not properly before us. Nor did the appendix contain an alphabetical index or list the volume where a document first appeared, making an already unnecessarily unwieldy appendix even more difficult to navigate. (Cal. Rules of Court, rules 5.1(d)(1), 9(b)(1).)

Plaintiffs' passing apologies for "non-substantive 'infractions' of this Court's rule[s]" are really a failure to recognize the overall scheme of the Rules of Court and the extent of their violations. Especially in light of their continuing disobedience, this disingenuous contriteness does not relieve them from an award of sanctions.

### Frivolous Appeal

In addition to these rules violations, the substance of the appeal was frivolous. In an arbitration, "the parties do not get to appeal an adverse decision." (*Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1076 [56 Cal.Rptr.2d 922].) That is just what plaintiffs have tried to do here. Courts have repeatedly instructed litigants that challenges to the arbitrator's rulings on discovery, admission of evidence, reasoning, and conduct of the proceedings do not lie. (*Moncharsh, supra,* 3 Cal.4th at p. 28; *Harris v. Sandro* (2002) 96 Cal.App.4th 1310, 1313, 1314–1315 [117 Cal.Rptr.2d 910]; *Pierotti v. Torian, supra,* 81 Cal.App.4th at p. 25.) Plaintiffs' crude attempt to characterize their claims so they would fall within acceptable bases for an appeal is an artifice we condemn.

Further, most of plaintiffs' claims are patently disingenuous. Arguments regarding use of the Streamlined Rules, failure to find the arbitration

was binding, the selection of the arbitrator and his subsequent disclosures or lack thereof, and the order compelling arbitration distort the law, the facts, and logic. Sanctions may be awarded when an appeal "indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) Using an objective standard, this appeal is frivolous.

### Sanctions Award

■ Because of the many violations of the Rules of Court and the patently frivolous nature of the appeal, and to discourage similar conduct in the future, sanctions must be substantial. (*Pierotti v. Torian, supra,* 81 Cal.App.4th at p. 34 [sanctions higher when "two separate (yet interrelated) wrongs" and due to degree of frivolousness]; *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 885–886 [271 Cal.Rptr. 513] [substantial sanctions to deter similar violation of Rules of Court violations].) Under the arbitration agreement defendants are entitled to attorney fees and we remand to the trial court to determine the amount of attorney fees defendants reasonably incurred in defending this appeal and the attorney fees reasonably incurred in making the motion for sanctions. (See *Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 461–462 [212 Cal.Rptr. 743].) Using the amount thus determined as a lodestar, the court shall award an equal amount to defendants as sanctions. A mere award of attorney fees, to which defendants are entitled under the contract, would fail to compensate defendants for the burdens imposed on them as a result of this unnecessary and unnecessarily burdensome appeal. Sanctions are awarded jointly and severally against plaintiffs and their lawyer.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to sanctions for the conduct of appellants and their counsel for bringing this frivolous appeal and for violating California Rules of Court, rules 5.1(b)(2) and 14(a)(1)(B) & (C) and (2)(C). The matter is remanded to the trial court to determine the amount of sanctions to be awarded in accordance with the formula described in this opinion. Sanctions are awarded against appellants and their counsel, jointly and severally. All sanctions are to be paid within 30 days after the order of the superior court fixing the amount of the award. Randall S. Waier and the

clerk of this court are each ordered to send a copy of this opinion to the State Bar of California upon issuance of the remittitur. (Bus. & Prof. Code, §§ 6086.7, subd. (a)(3) & 6068, subd. (o)(3); *Caro v. Smith* (1997) 59 Cal.App.4th 725, 740 [69 Cal.Rptr.2d 306].) Respondents shall recover their costs on appeal.

O'Leary, J., and Moore, J., concurred.

A petition for a rehearing was denied December 12, 2005, and appellants' petition for review by the Supreme Court was denied February 22, 2006, S140053.