Filed 8/29/13  Linquist v. RGB Systems CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GWEN LINQUIST,<br><br>   Plaintiff and Appellant,<br><br>     v.<br><br>RGB SYSTEMS, INC.,<br><br>   Defendant and Respondent. | G047340<br><br>(Super. Ct. No. 30-2009-00300442)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Gail Andrea Andler, Judge.  Affirmed.  Request for judicial notice denied.

Quintilone & Associates and Richard E. Quintilone II and Jesse M. Bablove for Plaintiff and Appellant.

Stradling Yocca Carlson & Rauth, Bruce D. May, Eve A. Brackmann, Amy S. Williams; Stuart Kane and Bruce D. May for Defendant and Respondent.

\*        \*        \*

Appellant Gwen Linquist, a salaried buyer, filed a putative class action against her employer, Extron Electronics.[1]  The court denied her motion for class certification, with respect to both a class of exempt buyers and a class of nonexempt employees, on several grounds, including her failure to provide substantial evidence that her claims were typical of any class of buyers.  Linquist has not shown either that the denial order is unsupported by substantial evidence, or rests on improper criteria or erroneous legal assumptions, or that the court abused its discretion.

The court granted Linquist leave to file an amended complaint substituting in a new class representative, Krystle Castro, with respect to the class of nonexempt employees.  Thereafter, Linquist filed a notice of appeal in which she stated she challenged only the portion of the court's order with respect to exempt employees.  She now claims that her notice of appeal should be treated as an appeal from not only the portion of the order affecting exempt buyers but also the portion of the order affecting nonexempt employees.  We disagree, inasmuch as the order affecting exempt employees, the only order from which an appeal was taken, is severable from the order affecting nonexempt employees.

We deny Linquist's request to take judicial notice of documents filed after the order denying her class certification motion was filed, and we decline her request to review the court's order on Castro's subsequent class certification motion, because we have no jurisdiction to address that order.

---

[1]    Respondent represents that it is properly identified as RGB Systems, Inc. doing business as Extron Electronics.  However, since the order at issue identifies respondent as Extron Electronics, we will continue to do so on appeal.

# I

# FACTS

A. *Class Action Complaint and Motion for Class Certification:*

In her second amended complaint, Linquist asserted causes of action for failure to pay overtime, failure to provide meal and rest periods, failure to provide itemized statements, failure to pay wages on termination, failure to pay wages twice monthly, and unlawful competition and business practices, as well as a cause of action based on the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.).

In her motion for class certification, Linquist sought certification of two classes: (1) persons who had worked as buyers, senior buyers, domestic buyers, or international buyers, and were misclassified as exempt employees; and (2) persons who had worked for Extron as nonexempt employees. She designated 10 subclasses.

The first subclass consisted only of buyers and was labeled "Overtime — Buyers Misclassification Subclass." She characterized this subclass as buyers who were misclassified as exempt employees and were not paid overtime pay. She did not allege that these buyers had any claims other than overtime claims.

Her nine other subclasses all consisted of persons who had "worked as non-exempt employees." They were divided into an "overtime subclass," an "off the clock subclass," a "meal break subclass," a "second meal break subclass," a "meal break waiver subclass," a "rest period subclass," a "paystub subclass," a "termination pay subclass," and a "[Business and Professions Code section] 17200 subclass." (Capitalization omitted.)

Linquist supported her motion with the declarations of 15 Extron employees and her counsel, Attorney Richard Quintilone. In her own declaration, Linquist stated that she had been employed both as a junior buyer, which was an hourly nonexempt position, and as a buyer, which was a salaried exempt position, although she

3

did not specify the time periods during which she was employed in these two positions. She described her position as essentially "a glorified secretary." She declared that she sometimes missed meal and rest breaks, that she did off-the-clock work and overtime work for which she was not compensated, and that she was not paid her final wages on the day she was terminated.

*B. Extron's Opposition to Linquist's Motion for Class Certification:*

In opposition to the motion, Extron argued that Linquist was a salaried exempt employee during the entire class period and, as a matter of law, could not represent hourly nonexempt employees. It further argued that Linquist could not represent any class of buyers because her work was not typical of other buyers. Extron also asserted that Linquist failed to establish that she had any viable claim. In addition, Extron contended that Linquist could not demonstrate, with respect to any class of buyers, either the requisite numerosity or the superiority of class adjudication.

Extron supported its opposition with the declarations of 20 persons, including Joanne Grush, Extron's vice-president of human resources, and Barbara Sallee, an Extron purchasing manager and the direct supervisor of Linquist. Grush declared that Linquist was a buyer, an exempt salaried employee, from July 18, 2005 until she was laid off in June 2009. In other words, Linquist was a salaried buyer at all times during the class period at issue, which began on September 8, 2005.

Sallee declared, inter alia, that as a salaried exempt employee, Linquist had more flexibility in her work hours and with her rest breaks and meal periods than did hourly employees. She further declared that as a salaried exempt employee, Linquist was not eligible for overtime pay. In addition to showing that Linquist's claims were not typical of hourly employees, Sallee's declaration showed that Linquist's claims were not necessarily typical of claims of salaried buyers either, a point we will discuss in more detail below.

4

*C.  Linquist's Request for Leave to Amend:*

About six weeks after Extron filed its opposition to her class certification motion, Linquist filed a motion for leave to file a third amended complaint.  In that motion, Linquist stated, inter alia, that she proposed to amend the complaint in order to name a new class representative with respect to the nonexempt employees.  Linquist stated that because she herself had been misclassified as an exempt employee, she had standing to represent nonexempt employees.  However, because Extron was challenging her standing to represent nonexempt employees, she desired to amend the complaint to name Castro, a nonexempt employee, as the class representative for the nonexempt employees.

However, even though Linquist filed her motion for leave to amend the complaint, she did not withdraw her pending motion for class certification, in which she sought to be named class representative for both exempt and nonexempt employees.  Consequently, the court held a hearing upon, and ruled upon, Linquist's motion for class certification as filed.

*D.  Trial Court Rulings, Notice of Appeal and Postruling Filings:*

The court denied the motion for class certification and granted the motion for leave to file a third amended complaint.  In its formal order of July 27, 2012, the court stated, inter alia, that Linquist had failed to present substantial evidence showing that she had valid individual claims for overtime pay and meal and rest period violations, that there was a "company-wide practice of meal and rest period violations[,]" or "that her claims for overtime [were] typical or common of any class of buyers."  The third amended complaint was filed in July 2012, naming both Linquist and Castro as class plaintiffs.

The following month, Linquist filed a notice of appeal from the "[d]enial of Class Certification as to the Exempt Employees Dated July 27, 2012."

5

Linquist represents that Castro filed a motion for class certification in October 2012, but that the court held it had no jurisdiction to rule on the motion during the pendency of Linquist's appeal.

## II

## DISCUSSION

*A. Scope of Appeal:*

*(1) Rulings on Castro motions—*

Linquist's topic heading No. VII reads: "The Trial Court Abused Its Discretion in Denying Leave to Amend the Complaint to Add a New Class Representative." (Some capitalization omitted.) Under that topic heading, she argues: "[T]he Court allowed Castro to file and pursue a Third Amended Complaint. Inexplicably, the trial court then declined to hear the Castro Motion for Class Certification. . . . In addition, the trial court also ignored its own prior statements, unequivocally concluding that Linquist was not the appropriate representative. The proposed Third Amended Complaint would have expressly resolved this concern of the trial court by adding a new class representative[] who was willing to serve as such, had the same interests as the class members and has no interest antagonistic to the class and had established the merits based inquiry the Court had required. [Record reference to Castro declaration.] Failing to permit leave to amend under these circumstances constitutes an abuse of discretion."

It is unclear whether Linquist intends to argue: (1) the court denied her motion for leave to file a third amended complaint; or (2) the court declined to hear a class certification motion filed by Castro after the third amended complaint was filed. To the extent Linquist intends to argue the former, the record shows that the court granted her motion for leave to file a third amended complaint, so she has no basis for claiming error. To the extent she intends to argue the latter, she is requesting that we address matters beyond the scope of this appeal. The only order before us is the July 27, 2012

6

order.  We will not review any orders filed after that date.

*(2)  Request for judicial notice—*

Linquist has filed a request for judicial notice in which she asks this court to take notice of Castro's motion for class certification and supporting documents, Extron's opposition and supporting documents, Castro's reply, and the court's ruling on the motion.  Linquist urges this court to consider procedural issues arising after the court filed the July 27, 2012 order, saying that it is necessary for us to get the big picture in order to rule upon the matter before us.

Extron opposes the request on several grounds:  (1) the records Linquist asks us to consider were not before the trial court when it issued the July 27, 2012 order now before us; (2) the records at issue are not relevant to the matter before us since they do not bear upon whether the court ruled correctly in its July 27, 2012 order; (3) the proof of service attached to the request for judicial notice is defective; and (4) Linquist failed to attach a proposed order to the motion.  The first two grounds are enough.  We do not take judicial notice of records that were not before the trial court (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3) and the proffered records are irrelevant to the question of whether the court properly denied Linquist's motion for class certification (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4).

*(3)  Notice of appeal—*

The concern underlying Linquist's desire for this court to review rulings on Castro's motion and to take judicial notice of the identified records is that Linquist fears certain issues will go unaddressed because of the peculiar procedural posture in which she has placed herself.  As we have observed, she filed a notice of appeal from what she characterized as the "[d]enial of Class Certification as to the Exempt Employees Dated July 27, 2012."  Her notice of appeal was crystal clear.  She challenged only the order denying class certification as to exempt employees and did not challenge the order denying class certification as to nonexempt employees.  As *Unilogic, Inc. v. Burroughs*

7

*Corp.* (1992) 10 Cal.App.4th 612 states: "'It is elementary that an appeal from a portion of a judgment brings up for review only that portion designated in the notice of appeal. [Citation.]'" (*Id.* at p. 625.)

Linquist would like to wriggle out of the application of that rule. Citing *Gonzales v. R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, she contends that because the various parts of the order were not severable, she did in essence challenge the entire order denying class certification. We disagree.

In general, an appeal from a specific portion of an order leaves the parts not appealed from unaffected, and the unaffected parts are deemed final. (*Gonzales v. R. J. Novick Constr. Co., supra*, 20 Cal.3d at pp. 804-805.) "[H]owever, an exception is made in cases involving judgments whose parts are not deemed to be severable. In such cases an appeal from a portion of the judgment brings up for review not only the portion appealed from but those other portions which are found to be 'interdependent upon' it. Thus, . . . : 'The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked. [Citations.] "[I]n order to be severable, and therefore [separately] appealable, any determination of the issues so settled by the judgment . . . must not affect the determination of the remaining issues whether such judgment on appeal is reversed or affirmed. . . ."'" (*Id.* at pp. 805-806.)

Here, Linquist says that the order denying class certification with respect to buyers classified as exempt employees is so interwoven with the order denying class certification with respect to nonexempt employees that a determination of the issues settled by the order with respect to exempt employees would affect the determination of the issues pertaining to nonexempt employees. This is so, she says, because if a class of exempt buyers were certified, and *if* it were later determined that the buyers were

8

*misclassified* as exempt employees, then she as a buyer misclassified as an exempt employee would be an adequate class representative for nonexempt employees.

This argument puts the cart well before the horse. The case would have to be fully adjudicated in order to determine whether Extron's buyers were properly classified as exempt employees. In other words, only when a final determination were made as to a fundamental question at trial—whether the buyers were properly classified—would it be known whether Linquist had been a proper class representative for nonexempt employees—or *not*. It doesn't work that way.

The order Linquist challenged presents a singular question—whether the court should have certified a proposed class of buyers classified as exempt employees. Whether this court affirms or reverses the trial court's order with respect to exempt buyers will not affect the trial court's order with respect to nonexempt employees. So, we conclude that the order denying class certification of exempt employees was severable and Linquist challenged only that order—not the order denying class certification of nonexempt employees.

This may leave Linquist in a bit of a pickle and she does not think this result is fair. She claims she "had no clear statement as [to] what claims were being denied" and she "could not have appealed anything more as the Superior Court had allegedly allowed leave to amend." Not so. The court was perfectly clear. It denied her class certification motion in its entirety. Moreover, in its order, the court specifically rejected Linquist's bid "to represent approximately 1,000 employees who work in approximately 595 job classifications . . . ." In other words, it denied class certification not only as to exempt buyers, but as to the nonexempt employees in hundreds of other job classifications.

Linquist complains that she was left guessing how to proceed after the court denied her motion for class certification and at the same time granted her motion for leave to file an amended complaint. She was uncertain whether to appeal the order

9

denying class certification for nonexempt employees or not, inasmuch as the court was permitting her to file an amended complaint adding a nonexempt employee as a class representative. However, to the extent she thought the situation was awkward, we observe it was a situation of her own creation. When she became concerned, it would appear, that she would need to add a nonexempt employee to act as class representative for nonexempt employees, she could have withdrawn her pending motion for class certification and first obtained a ruling on her motion requesting leave to amend. She did not choose to do that, instead leaving both her motions to be heard at the same time. She also could have filed an appeal from the order denying class certification as to the nonexempt employees, which she also chose not to do.

In any event, we conclude that the only order before us on appeal is the order denying Linquist's motion for certification of the class of exempt employees.

*(4) Issues Framed—*

Although we have stated that we will only consider Linquist's arguments with respect to the denial of class certification as to the exempt employees, we must still make some further comments regarding the issues we will address in this matter. It is well settled that the "appellant's brief 'must' '[s]tate each point under a separate heading or subheading summarizing the point . . . .' [Citations.] This is not a mere technical requirement; it is 'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; accord, *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 166.) We treat as waived any argument not contained under a separate heading or subheading. (*Conservatorship of Hume* (2006) 139 Cal.App.4th 393, 395, fn. 2; *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4.)

10

So, to the extent Linquist has raised issues that do not fall under the topic headings and subheadings appearing in the argument section of her opening brief, at pages 23 through 45, we disregard them. For example, at pages 20 and 21 of her opening brief, Lindquist provides an itemization of five issues to be addressed on appeal. However, those issues do not necessarily correlate with the issues identified in the topic headings and subheadings in the argument section of her brief. To the extent that those five issues are not addressed under the topic headings and subheadings found at pages 23 through 45 of her opening brief, and even to the extent we characterize the itemization of those issues as being a list of topic headings, those issues are deemed waived, inasmuch as they are unsupported by discussion, by legal authorities, or by citation to the record. (*Roden v. AmerisourceBergen Corp.* (2010) 186 Cal.App.4th 620, 634, 648-649.) We also disregard other issues and arguments that may be strewn about Linquist's introduction or statement of facts, without topic headings (*Evans v. Centerstone Development Co.*, *supra*, 134 Cal.App.4th at p. 165), or may be raised for the first time in her reply brief (*Akins v. State of California* (1998) 61 Cal.App.4th 1, 17, fn. 9; *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy* (1992) 4 Cal.App.4th 963, 976). Linquist's counsel would do well to review the rules of appellate procedure.

*B. Ruling on Linquist's Motion for Class Certification:*

*(1) Introduction—*

"Originally creatures of equity, class actions have been statutorily embraced by the Legislature whenever 'the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' [Citations.] Drawing on the language of Code of Civil Procedure section 382 and federal precedent, we have articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous

11

class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."' [Citations.]" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021.)

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' [Citations.]" (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1022.)

"Appeal of an order denying class certification 'presents an exception to the general rule on review that we look only to the trial court's result, not its rationale.' [Citation.]" (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 655.) On appeal, we "examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 436; accord, *Caro v. Procter & Gamble Co.*, *supra,* 18 Cal.App.4th at pp. 655-656.)

Linquist argues the court abused its discretion in denying her class certification motion because *Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th 1004 requires certification and because she has demonstrated that: (1) there exists a class that is readily ascertainable and numerous; (2) there is a community of

interest, a predominance of common questions of law or fact, and a class representative who has claims typical of the class and can adequately represent the class; and (3) proceeding as a class is the best method of adjudication.

*(2)  Community of Interest—*

*(a)  Burden of proof and findings*

We focus our attention on the question whether Linquist demonstrated a community of interest, inasmuch as it is determinative of this appeal.  As the trial court correctly observed, it was Linquist's burden to place substantial evidence in the record to demonstrate a community of interest.  (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108; *Caro v. Procter & Gamble Co.*, *supra*, 18 Cal.App.4th at pp. 654, 666.)  Regarding community of interest, "'[t]he crucial inquiry centers upon whether the plaintiffs are truly representative of the absent, unnamed class members.'  [Citation.]" (*Caro v. Procter & Gamble Co.*, *supra*, 18 Cal.App.4th at p. 663.)  "'"'The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member of the class he claims to represent.  [Citation.]"  [Citation.]'  [Citation.]  The class representative must be situated similarly to class members.  [Citation.]  'It is the fact that the class plaintiff's claims are typical and his representation of the class adequate which gives legitimacy to permitting him to bind class members who have notice of the action.  [Citations.]'  [Citation.]"  (*Id.* at pp. 663-664.)

Here, the court found, inter alia:  "[Linquist] seeks to represent approximately 1,000 employees who work in approximately 595 job classifications in 49 different departments in six different buildings in Anaheim and Orange that are not an integrated campus but are separate facilities with separate managers who have varying degrees of discretion as to the timing of meal periods and rest breaks. . . .  [Linquist] has also failed to show by substantial evidence that her claims for overtime are typical or common of any class of buyers."

13

*(b)  Evidence of typical claims*

Linquist insists that she has claims typical of the class.  However, in her three-page discussion of the topic, she offers only one record reference—to the portion of the record containing the order by which the court rejected her assertion.  Linquist argues the "court abused its discretion by relying on the tainted Extron declarations" and by concluding that those declarations conflicted with declarations supporting her motion. We could stop here and say she waived her argument for failure to cite the record, inasmuch as she has failed in her discussion of typical claims to provide a record reference for any declaration supporting her point.  (*Roden v. AmerisourceBergen Corp.*, *supra*, 186 Cal.App.4th at p. 634.)  However, we choose to ferret out some of the declarations and address her point.

*(i) declarations of Linquist, Grush and Sallee*

Linquist filed her lawsuit on September 8, 2009.  In both her second amended complaint and her motion for class certification Linquist proposed that each class and subclass consist of persons employed by Extron since September 8, 2005.  In her declaration in support of her motion, Linquist declared that she had been employed as both a nonexempt junior buyer, paid $17 per hour, and as a buyer salaried at about $59,000 per year, a position Extron classified as exempt.  She did not state when she held each of the two positions.  However, she claimed that even when salaried as a buyer she "was basically a glorified secretary" who was "micro-managed by Barbara [Sallee, her] direct supervisor" and was still "required to clock in and out for [her] arrival time."

In opposition to the motion, Extron, as we have already noted, provided the declaration of Grush, Extron's vice-president of human resources.  Grush declared that Linquist was hired as a junior buyer, a nonexempt hourly position, in 2003 and was promoted to buyer, an exempt salaried position, on July 18, 2005.  She further declared that Linquist remained in the salaried buyer position until she was laid off in June 2009.

14

Grush observed that Linquist was a salaried buyer at all times during the class period at issue, which began on September 8, 2005.

Linquist's supervisor, Sallee,, declared that as a salaried exempt employee, Linquist was not eligible for overtime pay and had more flexibility in her work hours and with her rest breaks and meal periods than did hourly employees. Sallee further declared that Linquist was classified as a buyer who did "MRO" purchasing—that is, purchasing for "Maintenance, Repairs, and Operations." As such, Linquist purchased materials to be used for Extron's internal use, not to be used in Extron's products. She was Extron's only MRO buyer; the other buyers purchased production material. Sallee explained at length the differences in purchasing MRO materials as opposed to production materials and why the work Linquist performed was not typical of the work performed by other buyers.

Furthermore, Grush declared that during the class period there were 23 buyers. Fourteen of them worked in domestic purchasing—seven buyers, including Linquist, and seven senior buyers. The work Linquist performed as the only MRO buyer was different from the work performed by any of the other domestic buyers. Furthermore, the work performed by the domestic buyers was different from the work performed by the domestic *senior* buyers. Also, there were nine international buyers, with various job titles, whose job functions were different from those of domestic buyers. In addition, as Sallee declared, Linquist and the other domestic buyers worked in "Building 2" whereas the international buyers worked in "Building 3," and the domestic buyers and the international buyers reported to different management personnel.

While Linquist maintains that her claims are typical of the putative classes of both hourly employees and buyers, she cites no evidence in support of this contention in her discussion of the typicality of her claims. Rather, she simply proclaims "[t]here are no facts from which the trial court could have concluded that [her] overtime, meal, rest and paystub claim was not typical of the class." We disagree. The declarations of

15

Grush and Sallee provide substantial evidence to show that Linquist's claims were not typical of either (1) hourly employees, inasmuch as she was in a job classification that permitted her more flexibility than the hourly employees, or (2) buyers, inasmuch as she performed different job functions than the other buyers and reported to different managers than many of the buyers.

Linquist explains that her "claims are typical because they arise from common policies applicable to all hourly employees." She says case law shows the typicality requirement can be satisfied simply because common employer policies apply to the employees in the class. The problem here is that Linquist was not an hourly employee.

*(ii) declaration of Baker*

And where common policies applied to buyers is concerned, we have another problem. Even if other buyers had job functions similar to Linquist's and common policies applied to those buyers, Linquist cites no portion of the record containing a declaration from another buyer identifying claims similar to hers, so as to indicate that her claims were typical of a class. (See *Caro v. Procter & Gamble Co.*, *supra*, 18 Cal.App.4th at pp. 663-664.)

In support of her motion for class certification, Linquist provided the declaration of only one other purported buyer—Brent Baker. Baker declared that he had previously worked for Extron as a salaried, exempt buyer. He stated that he did data entry, basic paperwork, and phone work, and ordered foam and shipping containers for the warehouse. He claimed he "was basically a glorified secretary." Baker indicated that he did not get the meal and rest breaks, or the overtime pay, to which he was entitled, and said he did off-the-clock work.

Baker's declaration was discredited by the declarations of Sallee and Grush. Sallee declared: "During his entire period of employment with Extron from September 2005 until March 2006, Mr. Baker worked only as a Purchasing Coordinator, which is a

16

non-exempt position, and he was paid on an hourly basis at $21.70 per hour." Attached to Sallee's declaration was a copy of Extron's September 6, 2005 letter to Baker confirming his employment as a purchasing coordinator at the rate of $21.70 per hour, beginning September 12, 2005. Also attached was a copy of Extron's personnel action notice showing Baker's voluntary termination from the position of purchasing coordinator, with an hourly pay of $21.70, effective March 9, 2006. In addition, Grush provided a listing of each person who had worked as a buyer, senior buyer or international buyer, from September 8, 2005 to February 29, 2012. Baker's name was not on the list.

Extron points out with dismay that Linquist's counsel, Attorney Quintilone, knew before he filed her class certification motion and supporting evidence that Baker was a nonexempt employee rather than an exempt, salaried buyer. Extron provided the court with the declaration of its own attorney, Bruce May. Attached to Attorney May's declaration was a series of e-mails between himself and Attorney Quintilone. On August 1, 2011, Attorney Quintilone wrote that the payroll records with which he had been provided showed Baker was a purchasing coordinator—a nonexempt hourly employee— during the September 8, 2005 through December 31, 2005 pay periods. However, inasmuch as Baker claimed to be an exempt employee, Attorney Quintilone suspected that he had been promoted after those pay periods and requested additional documentation from Extron that might reflect such a promotion. On August 2, 2011, Attorney May wrote back that "Baker was employed by Extron from 9/12/05 until 3/9/06, and was a non-exempt Purchasing Coordinator making $21.70 per hour the entire time. He never became a salaried buyer." In reply, Attorney Quintilone acknowledged receipt of Attorney May's information regarding Baker, but requested further documentation. On October 7, 2011, Attorney Quintilone filed the declaration of Baker, who stated he was a salaried exempt buyer.

17

Attorney May thereafter served Baker with a deposition subpoena and a notice of video conference deposition set for February 9, 2012. The day after he was served, Baker sent Attorneys May and Quintilone an e-mail in which he stated that he was appalled at being served with a deposition subpoena and that he would "NOT waste [his] time" attending a deposition.

Given the declarations of Sallee and Grush, the record contains substantial evidence to show that Baker was never a salaried exempt buyer with Extron. That being the case, it would appear that Linquist did not provide the declaration of any buyer who purportedly had claims similar to hers. Consequently, she failed to support her assertion that she was an adequate class representative because she "suffered the same harm as the other employees" and the trial court was correct that she did not meet her burden to provide substantial evidence to show that her claims were typical of the class.

*(iii) deposition of Varela*

We observe that in her introductory statement of the case, Linquist mentions that she provided the court with a transcript of the deposition testimony of Lori Varela, a former Extron buyer who commenced her own lawsuit against Extron. The deposition was taken in that other lawsuit. Linquist cites a 25-page span of the transcript, without providing a single pinpoint page reference. It is Linquist's burden, as we have already stated, to provide record references in support of her point. (*Roden v. AmerisourceBergen Corp.*, *supra*, 186 Cal.App.4th at p. 634.) Moreover, Linquist mentions that Varela testified to a lack of rest periods, but does not explain what this has to do with buyer overtime claims. Also, Linquist neither applies any information about Varela in the argument section of her brief pertaining to community of interest nor explains why Varela, who filed her own lawsuit, would be a class member in the lawsuit before us. It is her burden to provide argument and legal authority in support of her point. (*Id.* at pp. 648-649; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

18

In short, Linquist has not shown how the Varela transcript supports her assertion that she has demonstrated a community of interest with any buyer overtime claimants.

*(iv) opportunity to amend*

In concluding her discussion on the typicality of the class representative's claims, Linquist states the court abused its discretion by not affording an opportunity to add Castro as a class representative. She cites *Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89, which states that "[i]f the court . . . determines that [the plaintiff] cannot adequately represent both subclasses . . . it should afford her the opportunity to add additional class representatives to represent the [members of the subclass she cannot represent]." (*Id.* at p. 99.) Of course, here, the court did permit Linquist to amend her complaint to add Castro as a class representative.

*(c) Conclusion*

"[The plaintiff] did not meet [her] burden to establish as a matter of fact that [her] claims were typical of the class [she] sought to represent. [Citation.] . . . Thus, based upon application of correct legal criteria and substantial evidence in the record the superior court properly concluded [the plaintiff's] claims were not typical. Such determination alone was sufficient to defeat class certification on all [the plaintiff's] causes of action. [Citations.]" (*Caro v. Procter & Gamble Co.*, *supra*, 18 Cal.App.4th at p. 666.)

*(3) Ascertainable and Numerous Class; Superior Method of Adjudication—*

Linquist avers that she has demonstrated both the existence of an ascertainable and sufficiently numerous class and the superiority of the class action vehicle. We need not address these contentions, for even if she were correct, it would not affect the outcome of this case. We affirm the denial of class certification on any one "legally valid and factually supported ground. [Citations.]" (*Ramirez v. Balboa Thrift &*

*Loan* (2013) 215 Cal.App.4th 765, 777.) Here, we affirm based on the independent ground of lack of community of interest.

*(4) Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th 1004—

Linquist provides a four-and-a-half-page discussion of the decision in *Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th 1004, at pages 26 through 30 of her opening brief. She says that *Brinker* requires class certification in the matter before us, but provides little insight into why. Linquist states: "The Supreme Court in *Brinker* makes three points that are significant to this case. First, where an employer's class-wide policy violates the law on its face, a class should be certified. . . . Second, where a class-wide violation of law is shown, certification must not be denied on the basis of differences in damages. Third, where the order regarding certification as to a particular issue is erroneous in part, the entire issue must be remanded."

However, Linquist does not apply these arguments to the facts of this case or provide any record references to assist in our review. She leaves it to us to search the record or other portions of her 46-page opening brief to determine what Extron's policy was, whether it was class-wide and how it violated the law on its face, etc. This is not our job. It is the obligation of the appellant to provide page references. (*Evans v. Centerstone Development Co.*, *supra*, 134 Cal.App.4th at p. 166.) "One cannot simply say the court erred, and leave it up to the appellate court to figure out why. ([Citation] [appellate court need not furnish argument or search the record to ascertain whether there is support for appellant's contentions].)" (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) We could stop here and say that Linquist waived her argument based on *Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th 1004 by failing to provide either record references or legal analysis. (*Evans v. Centerstone Development Co.*, *supra*, 134 Cal.App.4th at p. 166; *Niko v. Foreman*, *supra*, 144 Cal.App.4th at p. 368.)

However, even if we take the time to look for record references elsewhere in her brief to support her generalized argument, we are not persuaded. For example, we

20

see that on page seven of her opening brief Linquist makes reference to an Extron policy regarding meal breaks and rest periods. When we check the record reference, we find that she is citing a portion of Extron's "Non-Exempt Employee Handbook" revised September 2004. However, Linquist does not explain why that handbook would have been applicable to her, inasmuch as she was classified as a salaried exempt employee during the class period.

On page nine of her opening brief, Linquist says that she provided to the trial court copies of Extron's 2004 and 2011 handbooks for exempt employees, each of which is roughly 80 pages long. However, she does not cite any portions of those handbooks or state what portions of them constitute a class-wide policy that violates the law on its face, etc. Simply put, she has not met her burden to show that *Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th 1004 requires class certification.

III

DISPOSITION

We deny Linquist's request for judicial notice. We affirm the order denying Linquist's class certification motion as to exempt employees. Extron shall recover its costs on appeal.

MOORE, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

IKOLA, J.

21