Filed 12/16/21  Milder v. Holley CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| ANDREW MILDER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SHAWN HOLLEY et al.,<br><br>Defendants and Respondents. | B299122<br><br>(Los Angeles County Super. Ct. Nos. BS164577, BS165902, and BS167341) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed in part, reversed in part, and remanded.

Andrew Milder, in pro. per., for Plaintiff and Appellant.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer, and Marshall R. Cole, for Defendants and Respondents.

Andrew Milder (plaintiff) initiated arbitration proceedings against his former attorney, Shawn Holley (Holley), and her law firm, Kinsella Weitzman Iser Kump & Aldisert, LLP (collectively, defendants).  Plaintiff later sought to resist arbitration, however, and he ultimately refused to attend the arbitration hearing.  In this appeal from a judgment confirming an arbitration award in defendants' favor, we are principally asked to consider whether consumer arbitration rules concerning disclosures and prevailing party attorney fees apply in the context of an attorney-client dispute.  We also consider whether the arbitrator abused his discretion in declining to postpone the arbitration pending resolution of plaintiff's appeal in a lawsuit challenging the validity of the arbitration provision in the retainer agreement signed by the parties.

## I.  BACKGROUND

### A.      *Engagement and Initial Demand for Arbitration*

Plaintiff hired defendants to represent him in a criminal matter in 2011.  Plaintiff and defendants executed a retainer agreement that included provisions to govern resolution of disputes, should they arise, between the parties to the agreement.

The dispute resolution section, set forth beneath an underlined heading, "Arbitration," states "it is always possible that some dispute may arise which cannot be resolved by discussion between us.  We believe that such disputes can be resolved more expeditiously and with less expense to all concerned by binding arbitration than by court action."  Following a brief, general description of arbitration, the agreement states that "[a]rbitration usually results in a decision

2

much more quickly than proceedings in court, and the attorneys' fees and other costs incurred by both sides are usually substantially less." The agreement further provides, in bold type: "By signing this letter, you agree that, in the event of any dispute arising out of or relating to this agreement, our relationship, or the services performed . . . , such dispute shall be resolved by submission to binding arbitration . . . ." The arbitration section of the retainer agreement closes with a paragraph that provides, subject to exceptions not applicable here, "The prevailing party in any action, arbitration, or proceeding . . . will be awarded reasonable attorneys' fees and costs incurred in that action, arbitration, or proceeding . . . ."

In the criminal case that gave rise to the retainer agreement, Holley moved to be relieved as plaintiff's attorney after a few months, citing an undisclosed conflict with plaintiff. Pursuant to the retainer agreement, plaintiff initiated arbitration against Holley in September 2014 and alleged she "failed to comply with her own written agreement, causing serious harm." In February 2015, plaintiff filed an amended demand for arbitration against Holley and her law firm alleging breach of contract, breach of fiduciary duty, fraud, and unfair business practices based on defendants' failure to deliver the "highest quality legal services" as promised in the retainer agreement.

### B. *Plaintiff's Fraudulent Inducement Action*
In May 2015, plaintiff filed a civil complaint against Holley and her firm. In addition to reiterating the allegations in his amended demand for arbitration, he sought a declaratory judgment that the retainer agreement's arbitration provision was

void.[1]  Plaintiff alleged he was fraudulently induced to agree to the arbitration provision based on the false assertion that the attorney fees and other costs incurred by both sides in arbitration are "usually substantially less" than in court proceedings.  We will refer to this civil action, Los Angeles Superior Court Case No. BC581072, as the fraudulent inducement action.

Soon after he filed the fraudulent inducement action, plaintiff filed an ex parte application for a temporary restraining order prohibiting defendants from proceeding with the arbitration.  The trial court denied the application and plaintiff did not appeal.  As we shall discuss, the arbitration proceeded to a hearing and final award.

In October 2015, the trial court sustained a demurrer to the complaint filed in the fraudulent inducement action and entered judgment for defendants.  The trial court reasoned plaintiff's theory of fraud in the inducement must be decided by the arbitrator rather than the trial court.  Plaintiff appealed, and this court reversed, explaining that although claims of fraud in the inducement of a contract *as a whole* are decided by the arbitrator, claims of fraud in the inducement as to an arbitration provision in particular must be decided by the court.  (*Milder v. Holley* (Jan. 31, 2017, B267974) [nonpub. opn.] (*Milder I*).)

On remand, the trial court ruled plaintiff was bound by the arbitration agreement because the statements regarding

---

[1]  Plaintiff's other causes of action were for fraud, breach of fiduciary duty, breach of contract, violation of Business and Professions Code section 17200, unjust enrichment, and intentional infliction of emotional distress.  Shortly after filing this complaint, plaintiff filed a second amended demand for arbitration incorporating the complaint's allegations and claims for relief.

4

expenses associated with arbitration were non-actionable opinion and plaintiff chose not to inquire about the basis for defendants' opinion.[2]

### C.    *Arbitration*

Plaintiff rejected two arbitrators proposed by defendants and one proposed by ADR Services before ADR Services appointed retired judge Michael D. Marcus (Judge Marcus) as the arbitrator in May 2015.  In June 2015, ADR Services sent the parties a disclosure statement for Judge Marcus.  Plaintiff responded in a letter expressing his objection "to the arbitration moving forward in any way" before the fraudulent inducement action was decided.  He further stated he was "unable to object or consent" to Judge Marcus's appointment because his disclosures were "insufficient in this consumer arbitration."  As we shall discuss in more detail, the ethics standards for arbitrators in the California Rules of Court include special disclosure requirements for arbitrators in consumer arbitrations.  Following extensive correspondence between the parties and ADR Services as to whether the arbitration was a consumer arbitration, ADR Services directed the parties in July 2015 to "make a motion to the court" because ADR Services had "no authority" to decide the issue.

The appellate record, however, does not reflect an attempt by any party to put the consumer arbitration issue before the trial court.  Instead, nearly two months later, ADR Services contacted the parties to schedule a status conference with Judge

---

[2]    Plaintiff noticed appeals from this ruling, which we decide in a separate opinion filed concurrently with this one.  (*Milder v. Holley et al.* (Dec. 16, 2021, B303175, B298984) [nonpub. opn.].)

Marcus. Through counsel, plaintiff requested a stay of the arbitration pending resolution of his appeal of the trial court's order sustaining defendants' demurrer in the fraudulent inducement action. Plaintiff also asserted Judge Marcus had no authority to act in the matter until he provided additional disclosures.

When ADR Services informed the parties that a status conference would be held the following month in October 2015, plaintiff responded he would not attend and he was "compelled to object" to Judge Marcus's appointment. A status conference was held in plaintiff's absence and Judge Marcus later issued a ruling concluding consumer arbitration disclosure rules did not apply and plaintiff waived any objection to his appointment as arbitrator.

An arbitration hearing was held in May 2016. Plaintiff again did not appear, and Judge Marcus dismissed his complaint with prejudice. In an interim arbitration award, Judge Marcus ruled defendants were the prevailing parties and accordingly entitled to attorney fees and costs under the retainer agreement. Judge Marcus ultimately awarded defendants the full amount of their requested attorney fees ($59,892.50) plus most of their requested costs ($19,705.98).

> D. *Competing Petitions to Vacate and Confirm the Arbitration Award*

The interim and final arbitration awards spawned three related trial court actions: a petition by plaintiff to vacate the interim arbitration award (Los Angeles Superior Court Case No. BS164577); a petition by plaintiff to vacate the final arbitration award (Los Angeles Superior Court Case No. BS167341); and a

6

petition by defendants to confirm the final arbitration award (Los Angeles Superior Court Case No. BS165902). Plaintiff contended the arbitration award should be vacated because his agreement to arbitrate was fraudulently induced, Judge Marcus should have postponed the arbitration pending further proceedings in the fraudulent inducement action, Judge Marcus's disclosures and the fee-shifting provision of the retainer agreement violated consumer arbitration rules, and the arbitration agreement was unconscionable.

The trial court rejected plaintiff's arguments and entered a judgment confirming the arbitration award.[3] The trial court found plaintiff's fraudulent inducement argument was previously rejected in the fraudulent inducement action and plaintiff forfeited the argument that the arbitration provision in the retainer agreement was unconscionable. Additionally, the court found Judge Marcus did not abuse his discretion in declining to postpone the arbitration because the trial court's denial of his application for a restraining order meant the arbitration was "required to proceed." The trial court further found Judge Marcus's determination that consumer arbitration disclosures

---

[3]     Several months after entering judgment confirming the arbitration award, the trial court issued an order denying plaintiff's petition to vacate the final arbitration award. The trial court opened the hearing by explaining, "[t]his is a petition to vacate the arbitration award, which the court has already confirmed and judgment has been entered. [¶] . . . [¶] Okay. I believe, at the last hearing, [plaintiff] requested to file leave to amend [his petition to vacate the arbitration award]. And I believe that the court said no. But I think that [plaintiff] went ahead and did it anyway. Anyway, we considered it. So here we go."

7

were unnecessary was not subject to judicial review and Plaintiff's argument that the retainer agreement's fee-shifting provision was illegal was forfeited and meritless in any case because consumer arbitration rules do not apply to attorney fee disputes.

## II. DISCUSSION

In this case, plaintiff forfeited the issue of whether the arbitrator did not make adequate disclosures for a "consumer" arbitration by failing to timely seek to disqualify Judge Marcus. That means there is no basis to vacate the arbitrator's dismissal of his complaint in arbitration; the remainder of the scattershot reasons plaintiff advances to achieve the same end are either also forfeited or unpersuasive. Plaintiff did not, however, forfeit the same point in connection with his objection to the attorney fees and costs the arbitrator ultimately assessed against him. We hold the arbitration agreement here is within the common understanding of a consumer arbitration and fees and costs are accordingly not recoverable. So we will order the trial court to strike those amounts from the arbitration award and otherwise confirm it.

A. *Plaintiff Forfeited Any Issue with the Arbitrator's Disclosures by Failing to Move to Disqualify the Arbitrator*

Code of Civil Procedure[4] section 1281.9 requires proposed arbitrators to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the

---

[4] Undesignated statutory references that follow are to the Code of Civil Procedure.

8

proposed neutral arbitrator would be able to be impartial," including discussions with the parties regarding employment opportunities, the names of parties to certain arbitrations in which the arbitrator has served, and various relationships to the parties, the lawyers, and their families. (§ 1281.9, subd. (a).) Arbitrators are also required, by statute, to make disclosures required under the California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards). (§ 1281.9, subd. (a)(2).)

In addition to supplementing statutory disclosure requirements by specifying, for example, the types of family relationships requiring disclosure (Ethics Standards, std. 7(d)(2)), the Ethics Standards include special disclosure requirements for "consumer arbitrations." The Ethics Standards define a consumer arbitration to include an arbitration conducted under a contract (1) "with a consumer party," (2) "drafted by or on behalf of the nonconsumer party," and (3) under circumstances in which "[t]he consumer party was required to accept the arbitration provision in the contract." (Ethics Standards, std. 2(d).) The Ethics Standards define "consumer party," in turn, to include "[a]n individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes . . . ." (Ethics Standards, std. 2(e)(1).)

Pre-arbitration disclosure obligations unique to consumer arbitrations are primarily set forth in Standard 8. Standard 8 builds on the generally applicable disclosure requirements set forth in Standard 7 by requiring proposed arbitrators in consumer arbitrations to disclose relationships between the dispute resolution provider organization (here, ADR Services) and a party or lawyer in the arbitration. (Ethics Standards, std.

9

8(b).)  If any such relationship is disclosed, the proposed arbitrator must also disclose information regarding their relationship with the provider organization, including any financial interest in the provider organization, the provider organization's policies concerning recruitment of arbitrators generally and selection for specific cases, and "[a]ny role the provider organization plays in ruling on requests for disqualification of the arbitrator."  (Ethics Standards, std. 8(c).)

Additional consumer arbitration disclosure rules are set forth in Standards 12 and 7.  Standard 12 sets forth conditions under which arbitrators may entertain certain offers (e.g., to serve as an arbitrator in another case) from parties or lawyers in pending arbitration.  (Ethics Standards, std. 12(b).)  If the arbitrator plans to entertain such offers, they must disclose this fact and, if the pending arbitration is a consumer arbitration, the disclosure must inform the parties the arbitrator will notify them (as required under Standard 12(d)) if they receive such an offer while the arbitration is pending.  (Ethics Standards, std. 12(b)(1).)  Arbitrators in non-consumer arbitrations who have disclosed that they will entertain such offers are generally not required to notify the parties when an offer is received.  (Ethics Standards, std. 12(d)(4).)  Standard 7 includes a provision essentially restating the consumer arbitration rules set forth in Standard 12.

Here, Judge Marcus's disclosure statement listed past arbitrations and mediations in which defendants and their lawyers were involved, but it did not include any Standard 8 disclosures regarding relationships between the parties (including their lawyers) and ADR Services.  Additionally, Judge Marcus disclosed he would continue to entertain offers of

employment as a neutral arbitrator from the parties and lawyers while the arbitration was pending, but, "[s]ince this is a non-consumer arbitration," he would "not inform the parties if he receive[d] such offer[s] . . . ."

Plaintiff cannot now challenge Judge Marcus's conclusion that this was not a consumer arbitration because he did not timely serve a notice of disqualification during the proceedings below. Section 1281.91, subdivision (a) provides that "[a] proposed neutral arbitrator shall be disqualified if he or she fails to comply with Section 1281.9 and any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days after the proposed nominee or appointee fails to comply with Section 1281.9." Subject to exceptions not applicable here, "[t]he right of a party to disqualify a proposed neutral arbitrator pursuant to this section shall be waived if the party fails to serve the notice pursuant to the times set forth in this section . . . ." (§ 1281.91, subd. (c).)

Plaintiff indicated he was "unable to object or consent" to Judge Marcus's appointment within 15 days of Judge Marcus's disclosures, but he took no further action when ADR Services directed the parties to resolve the issue in the trial court in July 2015. Instead, he responded to ADR Services' attempts to schedule a status conference with Judge Marcus by contending Judge Marcus's appointment was "not effective" until he provided consumer arbitration disclosures. It was not until October 2015—four months after the date of the letter enclosing Judge Marcus's disclosure statement—that plaintiff stated he was "[r]egretfully . . . compelled to object" to Judge Marcus's appointment as arbitrator. Even if Judge Marcus's refusal to provide consumer arbitration disclosures warranted his

11

disqualification, there are no grounds to vacate the arbitration award in the absence of a timely notice of disqualification. (§ 1286.2, subd. (a)(6)(B) [permitting vacatur of an award if the arbitrator "was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision"]; *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1085 ["The exclusive grounds for vacating an arbitration award are provided in . . . section 1286.2"].)

> ### B. *Plaintiff Did Not Forfeit His Challenge to the Award of Attorney Fees and Costs, and that Challenge Has Merit*

Section 1284.3, subdivision (a) provides that "[n]o neutral arbitrator or private arbitration company shall administer a consumer arbitration under any agreement or rule requiring that a consumer who is a party to the arbitration pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration, including, but not limited to, the fees and costs of the arbitrator, provider organization, attorney, or witnesses." (§ 1284.3, subd. (a).) Plaintiff also never timely raised section 1284.3 as reason not to go forward with the arbitration and that forfeits any challenge to the arbitration generally and the arbitrator's dismissal of his complaint in arbitration specifically. (See *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328 (*Cummings*) ["[I]f a party believes the entire contractual agreement or a provision for arbitration is illegal, it must oppose arbitration on this basis before participating in the process or forfeit the claim"], citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 31 (*Moncharsh*).)

Insofar as the purpose of section 1284.3 is to remove an obstacle to consumers seeking legal redress,[5] there is no reason to permit plaintiff—who was *not* deterred from pursuing his claims—to use it to vacate an adverse ruling.[6] (*Cummings*, *supra*, 128 Cal.App.4th at 329 ["[A] party who knowingly participates in the arbitration process without disclosing a ground for declaring it invalid is properly cast into the outer darkness of forfeiture"].)

The element of the arbitrator's award awarding attorney fees and costs to defendants, however, is another matter. Plaintiff cited section 1284.3 in opposing defendants' motion for attorney fees and costs and there are important public policy considerations at play in prohibiting an award of fees and costs against a consumer in arbitration.  (See, e.g., *Sea & Sage*

---

[5] As explained in one legislative analysis, "[t]he reason for the policy proposed by this bill is evident: particularly where there is great disparity in wealth and power between adversaries—as is typically true of mandatory consumer arbitrations—the prospect that a losing consumer party may be required to pay the high attorneys' fees and expenses of a corporate opponent may be so daunting as to deter the consumer from pursuing his or her case at all." (Assem. Judiciary Com., Analysis of Assem. Bill No. 2915 (2001-2002 Reg. Sess.) May 7, 2002, p. 6.)  The Legislature did not intend to "flatly ban or invalidate" all consumer arbitration agreements including fee-shifting provisions: "Rather, [section 1284.3] simply prohibits the large private judging companies from administering such consumer arbitrations unless the parties agree to modify this term."  (*Ibid.*)

[6] Plaintiff was represented by counsel when he filed his amended demand for arbitration in February 2015, months before he filed the fraudulent inducement action.

*Audobon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.)  There is therefore no forfeiture concern with respect to that segregable portion of the arbitration award.

At the time Judge Marcus and the trial court ruled on the applicability of section 1284.3, there was no controlling statutory definition of the terms "consumer" or "consumer arbitration."[7] Thus, giving the terms their ordinary understanding, we do not believe "consumer" would exclude plaintiff here.  It is not unusual to speak of "consumers of legal services."  (See, e.g., *Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 564; *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 981.)  True, it may be *more* common to think of consumers in connection with what the arbitrator and defendants' describe as more "prosaic" services, but that does not mean prospective law firm clients fall outside the scope of people understood to be consumers.  The additional observation by the arbitrator, trial court, and defendants in concluding to the contrary—that the negotiation of an attorney fee agreement is generally "an arm's-length transaction" (*Ramirez v. Sturdevant* (1994) 21 Cal.App.4th 904, 913 (*Ramirez*))—does not distinguish such negotiations from

---

[7]     Defendants and the trial court's reference to the Ethics Standards to define "consumer arbitration" for purposes of section 1284.3 is misplaced.  Unlike the statute addressing disclosure requirements for arbitrators (§ 1281.9, subd. (a)(2)), section 1284.3 does not incorporate the Ethics Standards.  As of January 1, 2020, however, the California Arbitration Act defines "consumer" to mean "an individual who seeks, uses, or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  (§ 1280, subd. (c).)

consumer transactions generally or establish that was the manner in which the retainer agreement here was signed. And nothing in the text of sections 1280 or 1284.3 suggests the latter protects only those consumers who are subject to coercive or deceptive practices.

Judge Marcus accordingly acted in excess of his authority in requiring plaintiff to pay the fees and costs of the opposing parties when he did not prevail in the arbitration. (§ 1284.3, subd. (a) ["No neutral arbitrator or private arbitration company shall administer a consumer arbitration under any agreement or rule requiring that a consumer who is a party to the arbitration pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration, including, but not limited to, the fees and costs of the arbitrator, provider organization, attorney, or witnesses"]; cf. *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075 [discussing severance of offending provisions in an arbitration agreement]; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 92 [severance available for costs provision].) Because it is possible to correct the order to pay fees and costs "without affecting the merits of the decision upon the controversy submitted," the trial court must do so. (§ 1286.6, subd. (b).) On remand, the trial court shall strike the award of fees and costs and confirm the award as corrected.[8] (§ 1286.6.)

---

[8]	The trial court "shall" correct a defective award (§ 1286.6), but it "may not" do so in the absence of a petition to correct the award unless a petition to vacate the award has been filed *and* "(1) All petitioners and respondents are before the court; or [¶] (2) All petitioners and respondents have been given reasonable notice that the court will be requested at the hearing to correct the award or that the court on its own motion has determined to

15

### C. Plaintiff's Unconscionability and Withdrawal Arguments Are Forfeited

A party contending an arbitration agreement is unconscionable must raise the issue in court when they first resist arbitration. (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 681; *Moncharsh*, *supra*, 3 Cal.4th at 30-31; *Cummings*, *supra*, 128 Cal.App.4th at 328-330.) Here, plaintiff did not raise unconscionability in the fraudulent inducement action or before the arbitrator.[9] He first raised the issue in his petition to vacate the interim arbitration award. The issue was accordingly forfeited. (*Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1372-1373 [declining to address unconscionability argument raised for the first time in petition to vacate award], disapproved on another ground in *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 382, fn. 6.)

Plaintiff also contends, for the first time in his reply brief, that he "lawfully withdrew" from the arbitration he initiated. Plaintiff forfeited this argument by failing to raise it in his

---

correct the award and all petitioners and respondents have been given an opportunity to show why the award should not be corrected." (§ 1286.8, subd. (b).) We will not order a new hearing on remand because defendants invite us to sever the impermissible prevailing party fees and costs award from the retainer agreement and leave the rest of the award intact.

[9] Plaintiff insists he did raise unconscionability before the arbitrator and cites a letter dated October 8, 2015, in which he objected to Marcus's refusal to stay the arbitration proceedings and provide consumer arbitration disclosures. The letter, however, makes no reference to unconscionability.

opening brief.  (*Safeway Wage & Hour Cases* (2019) 43
Cal.App.5th 665, 687, fn. 9.)

### D. *The Arbitrator's Refusal to Postpone the Arbitration Was Not an Abuse of Discretion*

Subject to exceptions not relevant to this case, a neutral
arbitrator appoints the time and place for arbitration.  (§ 1282.2,
subd. (a)(1).)  "On request of a party to the arbitration for good
cause, or upon his own determination, the neutral arbitrator may
postpone the hearing to a time not later than the date fixed by
the agreement for making the award, or to a later date if the
parties to the arbitration consent thereto."  (§ 1282.2, subd. (b).)
An arbitrator's hearing scheduling decision is reviewed for abuse
of discretion (*SWAB Financial, LLC v. E*Trade Securities, LLC*
(2007) 150 Cal.App.4th 1181, 1196-1198), and an award must be
vacated if a party's rights "were substantially prejudiced by the
refusal of the arbitrator[ ] to postpone the hearing upon sufficient
cause being shown therefor."  (§ 1286.2, subd. (a)(5).)

Plaintiff contends Judge Marcus abused his discretion in
declining to postpone arbitration while his appeal from the trial
court's order sustaining defendants' demurrer in the fraudulent
inducement action was pending.  Although there is no general
prohibition against proceeding with arbitration while a challenge
to arbitrability is pending in the trial court, plaintiff contends
Judge Marcus's decision to proceed "usurped the court's authority
to determine the issue of arbitrability."

That is not so.  If the trial court had found the agreement to
arbitrate to be the product of fraud, the resulting award would be
subject to vacatur.  (§ 1286.2, subd. (a)(4) [award must be vacated
if "[t]he arbitrators exceeded their powers and the award cannot

17

be corrected without affecting the merits of the decision upon the controversy submitted"].)  Judge Marcus made no ruling purporting to address fraud in the inducement, and we need not address in this opinion plaintiff's arguments concerning a ruling the arbitrator never made.

Plaintiff also contends a postponement was necessary because he faced a dilemma: he could "either refuse to appear at the arbitration so as not to waive his objections to its illegality by actively participating in it [and thereby risk dismissal] or risk such waiver by appearing and presenting evidence in support of his claims."  The dilemma, however, is chimerical; plaintiff imagines he had more options than he did.  By the date of the arbitration hearing, he had not preserved any objections to the arbitration.  We have already explained that plaintiff waived his objection to Judge Marcus's appointment and forfeited the section 1284.3 issue long before the hearing.

DISPOSITION

The judgment confirming the arbitration award is reversed and the matter is remanded for the trial court to enter a new and different order correcting the arbitration award by striking the award of attorney fees and costs and, so modified, confirming the arbitration award.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.

19